COCHRAN F. DONAHUE
6101 S. RURAL RD #102
TEMPE, AZ 85283
CUTHOUGHT@GMAIL.COM
520-557-9906

FILED ___ LODGED
___ RECEIVED ___ COPY

AUG 0 6 2026

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| COCHRAN F. DONAHUE,<br><br>    Plaintiff,<br><br>    vs.<br><br>CITY OF SCOTTSDALE; OFC. VINCE JOHNSON; OFC. MARK LEDO; OFC. CHRISTOPHER WILLIAMS; DET. WILLIAM HATHAWAY; SGT. JASON STUMPF; LT. BRIAN REYNOLDS; CMDR. THOMAS MYERS; CHIEF JOE LEDUC; A. CHIEF RICH SLAVIN; JEFF WALTHER; GREG CATON; SGT. BRYAN HINER; SOPHIA EVERTS; SOLARI INC; MASON WEBB, DO; CONNECTIONS HEALTH SOLUTIONS, INC; UPC URGENT PSYCHIATRIC CARE, LLC; REGINA NAMATOVU, PMHNP-BC; EVERETT WILLIAMS; MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a VALLEYWISE BEHAVIORAL HOSPITIAL; NICKNAZ JANAJREH, MD; RAPHAEL GOLEBIOWSKI, MD; KELSEY PIKE, MD and DOES 1 through 50, inclusive,<br><br>    Defendants. | Case No.:    **CV26-05504-PHX-DMF**<br>JUDGE:<br><br>VERIFIED COMPLAINT<br><br>1. UNLAWFUL SEARCH / SEIZURE OF PERSON (U.S. CONST. AMEND. 4);<br>2. VIOLATION OF FREEDOM OF SPEECH / RELIGION (U.S. CONST. AMEND. 1);<br>3. EXCESSIVE / UNREASONABLE FORCE (U.S. CONST. AMEND. 4);<br>4. MALICIOUS PROSECUTION (U.S. CONST. AMEND. 4, 8,14);<br>5. MUNICIPAL LIABILITY (*Monell* Liability) FOR FAILURE TO TRAIN AND/OR DISCIPLINE DEPUTIES and OFFICERS (U.S. CONST. AMENDS. 1, 4 & 14);<br>6. MUNICIPAL LIABILITY (*Monell* Liability) FOR CUSTOM / PRACTICE / POLICY (U.S. CONST. AMENDS. 1, 4 & 14)<br>7. COMMON LAW FALSE ARREST<br>8. COMMON LAW NEGLIGENCE<br>9. COMMON LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS<br>10. COMMON LAW DEFAMATION<br>11. VIOLATION OF RIGHT TO KEEP / BEAR ARMS (U.S. CONST. AMEND. 2).<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR DAMAGES

1

**COMES NOW** plaintiff Cochran F. Donahue and shows this honorable court the following:

## JURISDICTIONAL ALLEGATIONS

1.    As this action is brought under 42 U.S.C. § 1983, this court has jurisdiction over this case under its federal question jurisdiction pursuant to 28 U.S.C. § 1331.

2.    As the incidents complained of in this action occurred in the City of Scottsdale, State of Arizona, within the territorial jurisdiction of this court, venue properly lies in this court pursuant to 28 U.S.C. § 1391(b)(2).

## GENERAL ALLEGATIONS

3.    Plaintiff Cochran F. Donahue, hereinafter referred to as "DONAHUE" or "plaintiff DONAHUE", or "plaintiff" or "Plaintiff", is a natural person, not in custody, and who, at all times complained of in this action, resided in the City of Scottsdale, State of Arizona.

4.    Defendant City of Scottsdale, hereinafter also referred to as "SCOTTSDALE", is a municipal entity located in the State of Arizona; within the territorial jurisdiction of this court.

5.    Defendant OFC. Vince Johnson (1281), hereinafter also referred to as "JOHNSON", is, and at all times complained of herein, was, a peace officer employed by the Scottsdale Police Department, acting as an individual person

COMPLAINT FOR DAMAGES

2

under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant SCOTTSDALE.

6.    Defendant OFC. Mark Ledo (1656), hereinafter also referred to as "LEDO", is, and at all times complained of herein, was, a peace officer employed by the Scottsdale Police Department, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant SCOTTSDALE.

7.    Defendant OFC. Christopher Williams (1307), hereinafter also referred to as "WILLIAMS", is, and at all times complained of herein, was, a peace officer employed by the Scottsdale Police Department, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant SCOTTSDALE.

8.    Defendant DET. William Hathaway (850), hereinafter also referred to as "HATHAWAY", is, and at all times complained of herein, was, a peace officer and/or detective employed by the Scottsdale Police Department, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant SCOTTSDALE.

9. Defendant SGT. Jason Stumpf (730), hereinafter also referred to as "STUMPF", is, and at all times complained of herein, was, a peace officer and

sergeant employed by the Scottsdale Police Department, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant SCOTTSDALE.

10.    Defendant LT. Brian Reynolds (1290), hereinafter also referred to as "REYNOLDS", is, and at all times complained of herein, was, a peace officer and lieutenant employed by the Scottsdale Police Department, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant SCOTTSDALE.

11.    Defendant CMDR Thomas Myers (811), hereinafter also referred to as "MYERS", is, and at all times complained of herein, was, a peace officer and commander employed by the Scottsdale Police Department, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant SCOTTSDALE.

12.    Defendant ASST. Chief Rich Slavin (742), hereinafter also referred to as "SLAVIN", is, and at all times complained of herein, was, a peace officer and assistant chief of police employed by the Scottsdale Police Department, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant SCOTTSDALE.

13.    Defendant Chief Joe Leduc (522), hereinafter also referred to as "LEDUC", is, and at all times complained of herein, was, a peace officer and chief

COMPLAINT FOR DAMAGES

4

of police employed by the Scottsdale Police Department, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant SCOTTSDALE.

14.    Defendant ASST. City MGR. Jeff Walther, hereinafter also referred to as "WALTHER", is, and at all times complained of herein, was, a governmental official and city manager directly supervising the Scottsdale Police Department employed by the city of Scottsdale, acting as an individual person under the color of state law, in her individual capacity and was acting in the course of and within the scope of her employment with defendant SCOTTSDALE.

15.    Defendant City MGR. Greg Caton, hereinafter also referred to as "CATON", is, and at all times complained of herein, was, a governmental official acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his position overseeing all defendants listed herein.

16.    Defendant SGT. Bryan Hiner (1176), hereinafter also referred to as "HINER", is, and at all times complained of herein, was, a peace officer and sergeant employed by the Scottsdale Police Department Internal Affairs Division, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant SCOTTSDALE.

17.    Defendants DOES 1 through 6, inclusive, are sworn peace officers and / or deputy sheriffs and/or police officers and/or investigators and/or Special Officers and/or a dispatchers and/or some other public officer, public official or employee of defendant SCOTTSDALE and/or otherwise employed by the Scottsdale Police Department, who in some way committed some or all of the tortious actions (and constitutional violations) complained of in this action, and/or are otherwise responsible for and liable to plaintiff for the acts complained of in this action, whose identities are, and remain unknown to plaintiff, who will amend his complaint to add and to show the actual names of said DOE defendants when ascertained by plaintiff.

18.    At all times complained of herein, DOES 1 through 6, inclusive, were acting as individual persons acting under the color of state law, pursuant to their authority as sworn peace officers and/or deputy sheriffs and/or Special Officers and/or Supervisors (i.e. Sergeants, Lieutenants, Captains, Commanders, etc.) and/or dispatchers, employed by the Scottsdale Police Department and/or with some other police / law enforcement agency, and were acting in the course of and within the scope of their employment with defendant SCOTTSDALE and/or some other public entity.

19.    Defendants DOES 7 through 10, inclusive, are sworn peace officers and/or the Sheriff and/or Assistant Sheriffs and/or Commanders and/or Captains and/or Lieutenants and/or Sergeants and/or other Supervisory personnel and/or

COMPLAINT FOR DAMAGES

6

policy making and/or final policy making officials, employed by Scottsdale Police Department and/or some other police / law enforcement agency and/or defendant City of Scottsdale, who are in some substantial way liable and responsible for, or otherwise proximately caused and/or contributed to the occurrences complained of by plaintiff in this action, such as via supervisory liability (i.e. failure to properly supervise, improperly directing subordinate officers, approving actions of subordinate officers), via bystander liability (failing to intervene in and stop unlawful actions of their subordinates and/or other officers), and such as by creating and/or causing the creation of and/or contributing to the creation of the policies and/or practices and/or customs and/or usages of the Scottsdale Police Department for, *inter alia,*: 1) for unlawfully seizing persons; 2) using excessive force upon persons; 3) for retaliating against persons for exercising freedom of speech; 4) fabricating evidence to procure the bogus criminal and/or civil prosecutions of and the false convictions of innocents; and 5) covering up tortious conduct by Scottsdale Police Department peace officers.

20. At all times complained of herein, DOES 7 through 10, inclusive, were acting as individual persons acting under the color of state law, pursuant to their authority as Officers and/or Captains and/or Lieutenants and/or Sergeants and/or other Supervisory personnel and/or policy making and/or final policy making officials with the Scottsdale Police Department and/or some other police / law enforcement agency, and/or some other public official(s) with defendant

COMPLAINT FOR DAMAGES

7

SCOTTSDALE, and were acting in the course of and within the scope of their employment with defendant SCOTTSDALE.

21.    At all times complained of herein, defendants DOES 7 through 10, inclusive, were acting as individual persons under the color of state law; under and pursuant to their status and authority as peace officers and/or Supervisory peace officers (as described herein, above and below), and/or policy making peace officers, with the Scottsdale Police Department and/or otherwise with defendant SCOTTSDALE.

22.    Defendant Sophia Everts, hereinafter also referred to as "EVERTS," is, and at all times complained of herein, was, an employee, agent, crisis specialist, and/or behavioral health worker employed by Defendant Solari, Inc., acting as an individual person under the color of state law, in her individual capacity and acting in the course of and within the scope of her employment and/or agency relationship with Defendant SOLARI, INC. See Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir. 1993) ("A private individual may be subject to § 1983 liability if they willfully collaborated with an official state actor in the deprivation of a federal right.").

23.    Defendant Solari, Inc., hereinafter also referred to as "SOLARI," is, and at all times complained of herein, was, a corporation and behavioral health crisis response contractor operating within the State of Arizona and within the

COMPLAINT FOR DAMAGES

8

territorial jurisdiction of this Court, acting under color of state law through contractual relationships with governmental entities and law enforcement agencies.

24. Defendants DOES 11 through 15, inclusive, are employees, agents, crisis specialists, supervisors, dispatchers, behavioral health personnel, and/or other staff employed by Defendant SOLARI, INC., whose true names and capacities are presently unknown to Plaintiff, who participated in, authorized, approved, facilitated, concealed, and/or otherwise contributed to the unlawful acts and constitutional violations complained of herein. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

25. At all times complained of herein, DOES 11 through 15, inclusive, were acting under color of state law and in the course of and within the scope of their employment and/or agency relationships with Defendant SOLARI, INC.

26. Defendant Mason Webb, D.O., hereinafter also referred to as "WEBB," is, and at all times complained of herein, was, a physician and/or psychiatrist acting in tandem with Scottsdale Police Department officers, Solari personnel, and/or behavioral health providers, acting as an individual person under the color of state law, in his individual capacity and acting in the course of and within the scope of his employment and/or agency relationships. See Dwares v.

COMPLAINT FOR DAMAGES

9

City of New York, 985 F.2d 94, 98 (2d Cir. 1993) ("A private individual may be subject to § 1983 liability if they willfully collaborated with an official state actor in the deprivation of a federal right.").

27. Defendant Connections Health Solutions, Inc., hereinafter also referred to as "CONNECTIONS," is, and at all times complained of herein, was, a corporation and behavioral healthcare provider operating within the State of Arizona and doing business through Defendant UPC Urgent Psychiatric Care, LLC, acting under color of state law through contractual relationships with governmental entities and healthcare institutions.

28. Defendant UPC Urgent Psychiatric Care, LLC, hereinafter also referred to as "UPC," is, and at all times complained of herein, was, a behavioral healthcare and psychiatric treatment provider operating within the State of Arizona and within the territorial jurisdiction of this Court, acting under color of state law through contractual and cooperative relationships with governmental entities, law enforcement agencies, and healthcare institutions.

29. Defendant Regina Namatovu, PMHNP-BC, hereinafter also referred to as "NAMATOVU," is, and at all times complained of herein, was, a psychiatric mental health nurse practitioner employed by and/or acting on behalf of Defendant

COMPLAINT FOR DAMAGES

10

UPC, acting as an individual person under the color of state law, in her individual capacity and acting in the course of and within the scope of her employment and/or agency relationship with Defendant UPC. See Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir. 1993) ("A private individual may be subject to § 1983 liability if they willfully collaborated with an official state actor in the deprivation of a federal right.").

30.    Defendant Everett Williams, hereinafter also referred to as "WILLIAMS," is, and at all times complained of herein, was, a behavioral health case manager, social worker, and/or mental health professional employed by and/or acting on behalf of Defendant UPC and/or Connections Health Solutions, Inc., acting as an individual person under the color of state law, in his individual capacity and acting in the course of and within the scope of his employment and/or agency relationship. See Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir. 1993) ("A private individual may be subject to § 1983 liability if they willfully collaborated with an official state actor in the deprivation of a federal right.").

31.    Defendants DOES 16 through 30, inclusive, are nurses, behavioral health technicians, psychiatric staff, security personnel, supervisors, intake personnel, and/or other healthcare employees employed by and/or acting on behalf

COMPLAINT FOR DAMAGES

of Defendant UPC and/or Connections Health Solutions, Inc., whose true names and capacities are presently unknown to Plaintiff, who participated in, authorized, approved, facilitated, concealed, and/or otherwise contributed to the unlawful acts and constitutional violations complained of herein. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

32. At all times complained of herein, DOES 16 through 30, inclusive, were acting under color of state law and in the course of and within the scope of their employment and/or agency relationships with Defendant UPC and/or Connections Health Solutions, Inc.

33. Defendant Maricopa County Special Healthcare District d/b/a Valleywise Behavioral Hospital, hereinafter also referred to as "VALLEYWISE," is, and at all times complained of herein, was, a public healthcare entity and governmental subdivision operating within the State of Arizona and within the territorial jurisdiction of this Court.

34. Defendant Nicknaz Janajreh, M.D., hereinafter also referred to as "JANAJREH," is, and at all times complained of herein, was, a physician and/or psychiatrist employed by and/or acting on behalf of Defendant VALLEYWISE, acting as an individual person under the color of state law, in his individual

COMPLAINT FOR DAMAGES

12

capacity and acting in the course of and within the scope of his employment and/or agency relationship with Defendant VALLEYWISE.

35. Defendant Raphael Golebiowski, M.D., hereinafter also referred to as "GOLEBIOWSKI," is, and at all times complained of herein, was, a physician and/or psychiatrist employed by and/or acting on behalf of Defendant VALLEYWISE, acting as an individual person under the color of state law, in his individual capacity and acting in the course of and within the scope of his employment and/or agency relationship with Defendant VALLEYWISE.

36. Defendant Kelsey Pike, M.D., hereinafter also referred to as "PIKE," is, and at all times complained of herein, was, a physician and/or psychiatrist employed by and/or acting on behalf of Defendant VALLEYWISE, acting as an individual person under the color of state law, in her individual capacity and acting in the course of and within the scope of her employment and/or agency relationship with Defendant VALLEYWISE.

37. Defendants DOES 31 through 50, inclusive, are nurses, behavioral health technicians, physicians, psychiatrists, security personnel, supervisors, intake personnel, and/or other healthcare employees employed by and/or acting on behalf of Defendant VALLEYWISE, whose true names and capacities are presently

COMPLAINT FOR DAMAGES

13

unknown to Plaintiff, who participated in, authorized, approved, facilitated, concealed, and/or otherwise contributed to the unlawful acts and constitutional violations complained of herein. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

38. At all times complained of herein, DOES 31 through 50, inclusive, were acting under color of state law and in the course of and within the scope of their employment and/or agency relationships with Defendant VALLEYWISE.

39. Plaintiff is presently unaware of the identities of DOES 1 through 50, inclusive, and will amend his complaint to add and to show the actual names of said DOE defendants, when made known to plaintiff.

40. In addition to the above and foregoing defendants acted pursuant to a conspiracy, agreement and understanding and common plan and scheme to deprive the plaintiff of his federal Constitutional and statutory rights, and Arizona constitutional and statutory state law rights, as complained of in this action.

41. Defendants JOHNSON, LEDO, WILLIAMS, HATHAWAY, STUMPF, EVERTS, WEBB and DOES 1 through 15, inclusive, acted in joint and concerted action to so deprive the plaintiff of those rights as complained of herein; all in violation of 42 U.S.C. § 1983, and otherwise in violation of United States (Constitutional and statutory) law and Arizona (Constitutional and statutory) state law.

COMPLAINT FOR DAMAGES
14

42. Defendants NAMATOVU, WILLIAMS, UPC URGENT PSYCHIATRIC CARE, LLC, CONNECTIONS HEALTH SOLUTIONS, INC., and DOES 16 through 30, inclusive, acted jointly and in concert with one another, and with other state actors described herein, to deprive Plaintiff of rights secured by the Constitution and laws of the United States, including but not limited to Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution, all in violation of 42 U.S.C. § 1983, and otherwise in violation of United States constitutional and statutory law and Arizona constitutional and statutory law.

43. Defendants NAMATOVU, EVERETT WILLIAMS, UPC URGENT PSYCHIATRIC CARE, LLC, CONNECTIONS HEALTH SOLUTIONS, INC., and DOES 16 through 30, inclusive, substantially participated in, authorized, ratified, approved, facilitated, and/or failed to intervene in the unlawful seizure, detention, confinement, forced treatment, denial of due process, and other wrongful acts complained of herein, while acting under color of state law and within the course and scope of their employment and/or agency relationships.

44. Defendants JANAJREH, GOLEBIOWSKI, PIKE, MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a VALLEYWISE BEHAVIORAL HOSPITAL, and DOES 31 through 50, inclusive, acted jointly and in concert with one another, and with other state actors described herein, to deprive Plaintiff of rights secured by the Constitution and laws of the United States,

COMPLAINT FOR DAMAGES

15

including but not limited to Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution, all in violation of 42 U.S.C. § 1983, and otherwise in violation of United States constitutional and statutory law and Arizona constitutional and statutory law.

45.    Defendants JANAJREH, GOLEBIOWSKI, PIKE, MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a VALLEYWISE BEHAVIORAL HOSPITAL, and DOES 31 through 50, inclusive, substantially participated in, authorized, ratified, approved, facilitated, and/or failed to intervene in the unlawful confinement, forced medication, denial of medical autonomy, denial of due process, and other wrongful acts and constitutional violations complained of herein, while acting under color of state law and within the course and scope of their employment and/or agency relationships.

46.    Said conspiracy / agreement / understanding / plan / scheme / joint action / concerted action, above-referenced, was a proximate cause of the violation of the plaintiff's federal and state constitutional and statutory rights, as complained of herein.

47.    PLAINTIFF brings this action to hold defendants accountable for their misconduct and to raise public awareness of the need for law enforcement to recognize and appropriately deal with alleged mental health situations while securing constitutionally protected activity.

**FIRST CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983**
**Violation of Fourth Amendment Rights –**
**Unlawful / Unreasonable Seizure of Person & Property**
**(Against Defendants JOHNSON, HATHAWAY, STUMPF, LEDO,**
**WILLIAMS and DOES 1 through 6, inclusive)**

48.    Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 47, inclusive, above, as if set forth in full herein.

49.    During the early afternoon hours of October 19, 2024, DONAHUE called SOLARI, a helpline based in Tempe, Arizona with marketing slogans such as "Sometimes you need someone to listen" and "Call us for the tough times as well as the good times".

50.    Plaintiff DONAHUE semi-regularly calls Catholic, Mormon and Christian Orthodox Churches, Buddhists Temples, Islamic Centers, as well as helplines and colleges to talk about philosophical, spiritual, and/or emotional ideals.

51.    EVERTS represented SOLARI on this phone call.

52.    Plaintiff DONAHUE repeatedly told EVERTS, he was not comfortable speaking to a female, and asked for a male representative. EVERTS refused.

53.    Plaintiff DONAHUE never gave his name to EVERTS or SOLARI.

54.    EVERTS asked "Are you having thoughts to end your life today?" DONAHUE replied "No."

COMPLAINT FOR DAMAGES
17

55. Plaintiff DONAHUE then reluctantly joined EVERTS in a philosophical conversation, while venting about certain stressful incidents in DONAHUE's life.

56. During the conversation, Plaintiff DONAHUE did not threaten Defendant EVERTS or any other person, did not express any intent to harm himself or others, did not state that he intended to engage in "suicide by cop," and did not make any threats relating to mass violence, homicide, or any other criminal act.

57. After observing what appeared to be scripted, repetitive, and non-responsive answers from Defendant EVERTS, Plaintiff DONAHUE became increasingly distressed and uncomfortable with the interaction and ultimately terminated the call.

58. Plaintiff DONAHUE is, and at all relevant times has been, in possession of the complete and unedited recording of the Solari Human Services telephone call referenced herein. Plaintiff DONAHUE routinely records his telephone conversations as permitted under Arizona's one-party consent recording laws.

59. Defendants JOHNSON, LEDO, WILLIAMS, HATHAWAY, STUMPF, WEBB, UPC, CONNECTIONS, NAMATOVU, EVERETT WILLIAMS, VALLEYWISE, JANAJREH, GOLEBIOWSKI, PIKE, and DOES 1 through 50, inclusive, carelessly, recklessly, and/or deliberately refused to review

the phone call recording before taking action and continuing to take action against Plaintiff DONAHUE, including but not limited to his seizure, detention, confinement, evaluation, involuntary treatment, and continued deprivation of liberty.

60.    Defendant EVERTS contacted 911 regarding Plaintiff DONAHUE and knowingly, recklessly, and/or maliciously misrepresented statements allegedly made by Plaintiff DONAHUE, while requesting that law enforcement locate, "ping," track, and/or otherwise trace Plaintiff DONAHUE's cellular telephone location for purposes of initiating governmental intervention against him.

61.    Defendant JOHNSON contacted Defendant EVERTS as part of his purported investigation

62..    Recorded dialogue between JOHNSON and EVERTS:

**JOHNSON:**

"I was calling about the Cochran Donahue call"

**EVERTS:**

"Which call?"

**JOHNSON:**

"He was suicidal and homicidal, his name was Cochran Donahue. I gave the guy a ticket this morning."

**EVERTS:**

"Okay the name he gave me was John."

COMPLAINT FOR DAMAGES

19

**JOHNSON:**

"Oh."

**EVERTS:**

"Okay. That's his name?"

**JOHNSON:**

"Yeah that's his real name, but he always gives aliases and stuff like that, but the number he called from was the number, I think, the number that he always calls us from, and is it the 5 2 0 5 5 7 9 9 0 6?

63. Defendant EVERTS did not independently identify Plaintiff as "Cochran Donahue." Rather, Defendant JOHNSON affirmatively supplied and asserted that identification to EVERTS without reasonable verification and without lawful factual basis, relying primarily or entirely upon a telephone number associated with an Arizona nonprofit organization rather than competent evidence establishing Plaintiff's identity.

64. Defendant EVERTS repeatedly misrepresented, distorted, exaggerated, and/or outright fabricated statements allegedly made by Plaintiff DONAHUE in a manner intended to provoke an escalated law-enforcement and behavioral-health response against him, including conduct substantially similar in nature to "swatting" or false emergency reporting. Among other things, EVERTS falsely and/or misleadingly represented to Defendant JOHNSON statements including, but not limited to, "When I asked if he had done anything to hurt himself today, he said

COMPLAINT FOR DAMAGES

20

yes," that Plaintiff allegedly "wanted to kill his ex-girlfriend," and that Plaintiff was talking about wanting "to sue the police department, all this crazy stuff," despite the absence of such actual threats or statements in the underlying call recording. Plaintiff alleges such conduct violated, inter alia, A.R.S. § 13-2907 relating to false reporting to law enforcement.

65.     Earlier that same day, on October 19, 2024, Defendant JOHNSON had personally conducted a traffic stop involving Plaintiff DONAHUE for a minor traffic-related matter. During that encounter, Defendant JOHNSON did not document, report, or otherwise indicate that Plaintiff DONAHUE exhibited any bizarre behavior, signs of mental instability, suicidal ideation, homicidal ideation, impairment, or other circumstances suggesting Plaintiff presented a danger to himself or others.

66.     Defendants JOHNSON, HATHAWAY, STUMPF, and DOES 1 through 6, inclusive, then elected to rely substantially and/or exclusively upon the unverified statements of Defendant EVERTS to invoke purported exigent circumstances as justification to locate, track, and/or "ping" Plaintiff DONAHUE's cellular telephone and to initiate his detention, despite the absence of independently corroborated evidence establishing an immediate threat of harm or other lawful basis for such extraordinary governmental intrusion.

67.     In an apparent effort to justify and conceal Defendants' unconstitutional actions after the fact, Defendant STUMPF stated in his report,

COMPLAINT FOR DAMAGES

"Due to DONAHUE's extensive mental history and recent statements," in purported support of invoking exigent circumstances against Plaintiff DONAHUE, despite the absence of independently verified facts establishing an immediate and lawful basis for such emergency measures.

68.  Plaintiff DONAHUE does not possess an "extensive mental history" as alleged by Defendant STUMPF. Moreover, even assuming arguendo that such a history existed, Defendant STUMPF had no personal knowledge of any such alleged history and no lawful factual basis upon which to make such a representation. Likewise, Defendant STUMPF lacked actual knowledge of any alleged "recent statements" purportedly made by Plaintiff DONAHUE because Defendants JOHNSON, LEDO, WILLIAMS, HATHAWAY, STUMPF, WEBB, and DOES 1 through 6, inclusive, failed and/or refused to review the complete Solari Human Services call recording before taking and continuing action against Plaintiff DONAHUE.

69.  Defendant LEDO made contact with Plaintiff DONAHUE at approximately 1540 hours while Plaintiff DONAHUE was peacefully near his apartment complex.

70.  At the time Defendants made contact with Plaintiff DONAHUE, Plaintiff possessed no weapons, illegal drugs, unlawful contraband, or other items suggesting criminal activity or an immediate threat to himself or others.

COMPLAINT FOR DAMAGES

22

71.    At the time of contact, Plaintiff DONAHUE was not disturbing the peace, creating a public disturbance, engaging in any altercation, trespassing, loitering, threatening any person, or otherwise exhibiting behavior reasonably indicative of criminal activity, mental illness, imminent danger, or acute psychological distress.

72.    Plaintiff DONAHUE was not a convicted felon, prohibited possessor, or otherwise disqualified person under Arizona law, and was not in violation of A.R.S. § 13-3101(7) or any related firearm prohibition statute at any time relevant herein.

73.    Plaintiff DONAHUE was confused as to the reason for Defendants' sudden approach and detention, and, without meaningful explanation or lawful justification being provided, was immediately placed in handcuffs and forced to sit on the ground against his will.

74.    Defendant LEDO failed to observe any behavior by Plaintiff DONAHUE reasonably indicating dangerousness, criminal conduct, mental instability, or an imminent threat to himself or others. To the contrary, Defendant LEDO repeatedly acknowledged in his own report that Plaintiff DONAHUE "remained seated," "complied," and "did not attempt to flee," thereby confirming Plaintiff's cooperative and non-threatening demeanor throughout the encounter.

75.    Defendant LEDO claimed that he placed Plaintiff DONAHUE in handcuffs due to alleged "danger to self" and "danger to other(s)" statements

COMPLAINT FOR DAMAGES

23

purportedly made by Plaintiff DONAHUE to dispatch and other officers. Plaintiff alleges this assertion was factually false, knowingly misleading, reckless, and/or entirely fabricated. Plaintiff DONAHUE did not make any such statements to dispatch, Defendant LEDO, or any other officer, nor did any officer, dispatcher, or witness personally observe Plaintiff DONAHUE make statements reasonably indicating suicidal intent, homicidal intent, or threats of violence.

76. Defendants JOHNSON, WILLIAMS, HATHAWAY, STUMPF, and DOES 1 through 6, inclusive, subsequently arrived on scene and likewise failed to observe Plaintiff DONAHUE engage in any conduct, behavior, statements, threats, or actions reasonably indicative of criminal activity, suicidal intent, homicidal intent, mental instability, or an imminent danger to himself or others.

77. Despite taking and continuing substantial action against Plaintiff DONAHUE, Defendants JOHNSON, LEDO, WILLIAMS, HATHAWAY, STUMPF, and DOES 1 through 6, inclusive, failed and/or refused to review the complete Solari Human Services phone call recording that formed the basis of the allegations and purported justification for Plaintiff DONAHUE's detention and seizure.

78. Defendants JOHNSON, LEDO, WILLIAMS, HATHAWAY, STUMPF, and DOES 1 through 6, inclusive, jointly and unanimously elected to seize, detain, and deprive Plaintiff DONAHUE of his liberty under the guise of an allegedly emergent mental-health intervention, despite the absence of lawful constitutional

COMPLAINT FOR DAMAGES

24

justification, thereby violating Plaintiff DONAHUE's rights under the Fourth Amendment to the United States Constitution..

79. Believing the detention and transport to be unlawful, Plaintiff DONAHUE verbally objected to the seizure and refused to walk to Defendant HATHAWAY's patrol SUV, thereby passively resisting Defendants' attempts to compel his involuntary transport. Plaintiff alleges that the actions complained of herein constituted unlawful restraint and deprivation of rights under color of law, including conduct actionable under 18 U.S.C. § 242.

80. After Plaintiff DONAHUE, while already handcuffed and restrained, refused to walk to Defendant HATHAWAY's patrol SUV, Defendants JOHNSON, LEDO, WILLIAMS, HATHAWAY, STUMPF, and DOES 1 through 6, inclusive, escalated the encounter further and used excessive and objectively unreasonable force against Plaintiff DONAHUE by forcibly pushing him into a full-body restraint system, taking and rolling him onto the ground while handcuffed, and tightening the restraint apparatus to an unbearable and punitive degree, despite Plaintiff DONAHUE not posing an immediate threat to officer safety or others.

81. Defendants JOHNSON, LEDO, WILLIAMS, HATHAWAY, STUMPF, and DOES 1 through 6, inclusive, then mocked and laughed at Plaintiff DONAHUE while forcibly placing a restrictive spit hood and/or restraint helmet over Plaintiff's head in a manner that impeded his comfort and ability to breathe normally, and further demeaned Plaintiff by patting him on the head in a

COMPLAINT FOR DAMAGES

25

humiliating and degrading manner as though he were an animal rather than a human being in custody.

82.    The actions of Defendants JOHNSON, LEDO, WILLIAMS, HATHAWAY, STUMPF, and DOES 1 through 6, inclusive, as described herein, were objectively humiliating, degrading, punitive, and intended, at least in part, to publicly demean and humiliate Plaintiff DONAHUE rather than to serve any legitimate safety or law-enforcement necessity.

83.    In Graham v. Connor 490 U.S. 386 (1989) the United States Supreme Court established three primary factors for determining whether an officer's use of force was objectively reasonable under the Fourth Amendment: (1) the severity of the situation at issue; (2) whether the individual posed an immediate threat to the safety of officers or others; and (3) whether the individual was actively resisting detention or attempting to evade detention by flight.

84.    Plaintiff DONAHUE never threatened any person, engaged in violence, attempted to assault officers, or actively resisted the actual and/or de facto arrest beyond refusing to walk to the patrol vehicle while already handcuffed and restrained. Under the standards articulated in Graham v. Connor, the use of a full-body restraint system, STUMP, HATHAWAY, JOHNSON, LEDO's act of forcing Plaintiff DONAHUE onto and rolling him across the ground while already restrained, and the placement of a restrictive helmet and/or spit hood upon Plaintiff DONAHUE constituted objectively unreasonable, excessive, abusive, and

COMPLAINT FOR DAMAGES

26

unnecessary force under the circumstances known to Defendants JOHNSON, LEDO, WILLIAMS, HATHAWAY, STUMPF, and DOES 1 through 6, inclusive.

85.    Defendants lacked reasonable articulable suspicion ("RAS") to lawfully detain Plaintiff DONAHUE. In Terry v. Ohio, the United States Supreme Court established that officers must be able to articulate specific, objective, and reasonable facts supporting a detention. Here, Defendants JOHNSON, LEDO, WILLIAMS, HATHAWAY, STUMPF, and DOES 1 through 6, inclusive, lacked such facts and instead relied upon unverified, exaggerated, and/or fabricated allegations without independently corroborating any immediate threat, criminal conduct, or lawful basis for seizure.

86.    Defendants JOHNSON, LEDO, WILLIAMS, HATHAWAY, STUMPF, WEBB, and DOES 1 through 6, inclusive, failed to identify or document specific facts personally observed by them that would reasonably support the seizure and detention of Plaintiff DONAHUE. Instead, Defendants elected to rely exclusively upon the unverified allegations and representations of Defendant EVERTS while disregarding Plaintiff DONAHUE's observable conduct, despite the absence of independently corroborated evidence establishing an immediate threat, criminal conduct, or lawful basis for detention.

87.    Under the totality of the circumstances known to Defendants at the time, Defendants lacked both reasonable articulable suspicion and probable cause to seize and detain Plaintiff DONAHUE. Earlier that same day, Defendants

COMPLAINT FOR DAMAGES

27

JOHNSON and STUMPF had prior interactions with Plaintiff DONAHUE during which no concerns regarding dangerousness, mental instability, suicidal ideation, homicidal ideation, or public safety were identified or documented. Thereafter, Defendants elected to rely upon extreme, hyperbolic, exaggerated, and unverified statements made by a third party, Defendant EVERTS, who had never personally met Plaintiff DONAHUE. Upon subsequently encountering Plaintiff DONAHUE in person, Defendants again failed to observe any conduct reasonably suggesting Plaintiff posed a danger to himself or others. See United States v. Ortiz-Hernandez ("Probable cause requires evaluation of the totality of the circumstances."). Instead of considering the totality of circumstances objectively, Defendants selectively relied upon uncorroborated allegations while disregarding exculpatory observations and facts directly before them. As such, Defendants lacked reasonable articulable suspicion and lacked probable cause to detain Plaintiff DONAHUE.

88. In **Miller v. Prince George's County**, 475 F.3d 621 (4th Cir. 2007), the Fourth Circuit held that an officer violates the Fourth Amendment when he makes material misstatements or omissions in order to justify an arrest or detention. The court explained that "reckless disregard" exists where the affiant entertains "serious doubts as to the truth" of his statements. Here, the officer had personally observed Plaintiff earlier in the day, noted no mental health concerns, and released him without incident. By later acting on unverified hearsay allegations that Plaintiff threatened mass violence—contradicting his own firsthand

COMPLAINT FOR DAMAGES

observations—the officer necessarily acted with reckless disregard for the truth, rendering the seizure unconstitutional.

89.    In **Krause v. Bennett**, 887 F.2d 362 (2d Cir. 1989), the Second Circuit clarified that probable cause exists only when officers possess "knowledge or reasonably trustworthy information" sufficient to warrant a prudent person in believing the suspect committed an offense. The same officer here already knew Plaintiff had not exhibited dangerous or erratic behavior during the traffic stop. Reliance solely on a crisis worker's uncorroborated claims—contradicted by the officer's own direct knowledge—was not "reasonably trustworthy information." Under Krause, the officer's decision to arrest was not objectively reasonable and therefore lacked probable cause.

90.    In **Golino v. City of New Haven**, 950 F.2d 864 (2d Cir. 1991), the court held that omissions of material, exculpatory facts from affidavits or reports can vitiate probable cause and create § 1983 liability. Golino emphasized that information which, if disclosed, would cast doubt on the basis for probable cause cannot be withheld. The officer here omitted his own knowledge that Plaintiff was calm, coherent, and non-dangerous only hours earlier and during the detainment. By failing to disclose those facts while presenting the crisis worker's allegations as

COMPLAINT FOR DAMAGES

29

justification for detention, the officer committed the very type of constitutional violation condemned in Golino.

91.    In **Whiteley v. Warden**, 401 U.S. 560 (1971), the Supreme Court held that an arrest is invalid if based solely on an uncorroborated report from another officer or informant, without independent facts to support probable cause. The Court stressed that conclusory allegations cannot substitute for evidence. In this case, the officer abandoned his own observations and relied exclusively on the crisis worker's claims, which he did not corroborate in any way. Under Whiteley, an arrest made in reliance on such unverified hearsay, when the officer himself possessed contrary information, cannot establish probable cause and violates the Fourth Amendment.

92.    After being seized and detained by Defendants, Plaintiff DONAHUE clearly and unequivocally stated that he did not consent to any searches, seizures, detention, transport, evaluation, or other governmental intrusion upon his person, property, or liberty.

93.    Defendants LEDO, WILLIAMS, STUMPF, and DOES 1 through 6, inclusive, subsequently searched nearby parking areas, located a church-owned vehicle sometimes driven by Plaintiff DONAHUE, entered and/or forcibly accessed the vehicle without consent, and seized Plaintiff DONAHUE's lawfully

COMPLAINT FOR DAMAGES

owned, unloaded Glock pistol, which had been stored inside the trunk compartment beneath the spare tire.

94. Defendants LEDO, WILLIAMS, STUMPF, and DOES 1 through 6, inclusive, then entered and searched Plaintiff DONAHUE's apartment without consent and without lawful warrant authorization, conducted an extensive search of the residence at their leisure, caused damage to Plaintiff DONAHUE's personal property and artwork, and seized an unloaded, incomplete, partially inoperable, and otherwise lawfully possessed rifle from within the residence.

95. In **Mincey v. Arizona**, 437 U.S. 385, 393 (1978), the Supreme Court held that warrantless actions must be "strictly circumscribed by the exigencies which justify its initiation." That means police cannot use an alleged emergency as an open-ended license to search or detain. Here, even if officers initially believed there was a safety concern based on the false crisis report, once Plaintiff was already handcuffed and secured, the supposed exigency evaporated. Continuing to hunt for a vehicle Plaintiff was known to drive and breaking into rummage for weapons and then breaking into his apartment and doing the same, was not "strictly circumscribed" by the original justification. Mincey makes clear that exigency ends when the threat is neutralized, and here, the Plaintiff's detention ended it completely if it ever existed in the first place.

COMPLAINT FOR DAMAGES

96.     In **United States v. Delgadillo-Velasquez**, 856 F.2d 1292, 1299 (9th Cir. 1988), the Ninth Circuit stressed that officers cannot claim exigent circumstances when a suspect is already in custody and no immediate danger exists. The whole rationale for exigency is officer or public safety in the face of an imminent threat. But where the suspect is restrained, handcuffed, and incapable of accessing any supposed weapon, the threat is gone. In this case, Plaintiff was already in custody when officers chose to locate and forcibly enter his vehicle and apartment to search for guns. Delgadillo-Velasquez establishes that such conduct cannot be justified as exigent, because once the suspect is secured there is no emergency left to excuse bypassing the Fourth Amendment's warrant requirement.

97.     In **Hopkins v. Bonvicino**, 573 F.3d 752, 763 (9th Cir. 2009), the court reiterated that exigency requires an "objectively reasonable basis" to believe immediate action was necessary. A generalized desire to search is not enough; the emergency must be real and ongoing. Here, the officers had no objectively reasonable basis for breaking into Plaintiff's vehicle or apartment. Plaintiff was already in handcuffs, there was no present risk of harm, and any firearms located inside were unloaded and inaccessible. Hopkins underscores that searching at leisure under the guise of exigency is unlawful. Even if some exigent

circumstances arguably existed at the moment of arrest, they ended the moment Plaintiff was restrained, and any further warrantless search of his vehicle and apartment fell outside constitutional bounds

98.    Defendants JOHNSON, HATHAWAY, and DOES 1 through 6, inclusive, involuntarily transported Plaintiff DONAHUE to Defendants UPC URGENT PSYCHIATRIC CARE, LLC and CONNECTIONS HEALTH SOLUTIONS, INC. for psychiatric evaluation and detention.

99.    During Plaintiff DONAHUE's involuntary transport, Defendants JOHNSON, HATHAWAY, and DOES 1 through 6, inclusive, mocked and demeaned Plaintiff DONAHUE and stated, in substance, that they could subject individuals to such detention and transport whenever they "felt like it" under Arizona's Title 36 mental-health statutes, thereby demonstrating deliberate indifference toward Plaintiff DONAHUE's constitutional rights and liberty interests.

100.    Upon arriving at Defendant UPC, Plaintiff DONAHUE was, within approximately ten minutes of arrival, prescribed Risperdal for the purported treatment of schizophrenia, despite Plaintiff DONAHUE denying symptoms consistent with schizophrenia and alleging that he did not suffer from such condition.

101.    Plaintiff DONAHUE refused the proposed administration of psychiatric medication, including Risperdal, because Plaintiff DONAHUE did not

COMPLAINT FOR DAMAGES

33

believe he suffered from the mental-health condition for which the medication was being prescribed and further because the use of synthetic psychiatric medication conflicted with Plaintiff DONAHUE's sincerely held religious beliefs and personal bodily autonomy.

102. Plaintiff DONAHUE possesses rights secured by the First Amendment to the United States Constitution to freely exercise his sincerely held religious beliefs, including beliefs concerning the preservation and safeguarding of his physical body and opposition to certain forms of synthetic psychiatric medication and forced pharmacological intervention. See Religious Freedom Restoration Act of 1993, which provides that government actions substantially burdening religious exercise must satisfy strict scrutiny and reasonably accommodate sincerely held religious practices absent a compelling governmental interest pursued through the least restrictive means.

103. After being confined at Defendant UPC Phoenix for more than seventy-two (72) hours, Plaintiff DONAHUE was served with involuntary mental-health petition paperwork procured, initiated, authorized, and/or supported by Defendants JOHNSON, HATHAWAY, WEBB, and DOES 1 through 6, inclusive.

104. In the involuntary petition paperwork, Defendants JOHNSON, HATHAWAY, WEBB, and DOES 1 through 6, inclusive, attributed numerous alarming and inflammatory statements to Plaintiff DONAHUE, including allegations that Plaintiff "wanted to perform a mass shooting and commit suicide

COMPLAINT FOR DAMAGES

34

by police," "lacks insight," "wanted to perform a mass shooting and take down the government," identified with a scene from the movie Joker involving violence toward a girlfriend, believed that betrayal "makes people do bad things" in reference to Dungeons & Dragons, and "wanted to commit suicide by cop because he hates all cops and hates all people." Plaintiff DONAHUE denies making such statements and alleges that these representations were materially false, misleading, exaggerated, taken out of context, and/or recklessly repeated without proper investigation or verification.

105. Plaintiff DONAHUE alleges that Defendants JOHNSON, LEDO, WILLIAMS, HATHAWAY, STUMPF, WEBB, and DOES 1 through 6, inclusive, knowingly, recklessly, and/or with deliberate indifference included materially false, misleading, exaggerated, and/or unverified statements within official reports, petition documents, and related governmental records, conduct which Plaintiff alleges undermines public trust in law enforcement and governmental institutions and constitutes conduct prohibited under A.R.S. § 13-2702 relating to false swearing and unsworn falsification.

106. Plaintiff DONAHUE denies ever making the statements attributed to him within the involuntary petition paperwork and related reports described herein.

107. Plaintiff DONAHUE repeatedly explained to Defendants that there is no scene in either Joker or Joker: Folie à Deux in which the Joker kills his

COMPLAINT FOR DAMAGES

girlfriend, contrary to the representations and implications attributed to Plaintiff by Defendants.

108.    Plaintiff DONAHUE repeatedly informed Defendants that he did not have a current girlfriend or ex-girlfriend and therefore had made no statements expressing any desire or intent to harm such a person.

109.    Defendants JOHNSON, HATHAWAY, WEBB, and DOES 1 through 6, inclusive, lacked personal knowledge as to whether the alleged statements attributed to Plaintiff DONAHUE were true because, despite having the ability to do so, they failed and/or refused to review the underlying Solari Human Services recording before initiating and continuing proceedings against Plaintiff DONAHUE. Nevertheless, Defendants represented such allegations as factual and reliable as though they possessed firsthand knowledge of the alleged statements, despite the absence of proper investigation, verification, or corroboration, in furtherance of detaining, confining, and punishing Plaintiff DONAHUE.

110.    **Golino v. City of New Haven, 950 F.2d 864, 871 (2d Cir. 1991): In** *Golino*, the Second Circuit held that misrepresenting information as firsthand, or omitting material facts, undermines probable cause. Similarly, in the petition filed by Webb, Johnson, Hathaway, and associated parties, the petitioners presented statements as if they personally witnessed or knew Donahue's alleged statements. In reality, they had no firsthand knowledge and did not identify these statements as alleged or secondhand. By asserting knowledge they did not possess, they

misrepresented critical facts, creating a false impression of certainty and reliability. This deliberate misrepresentation mirrors the type of conduct condemned in *Golino* and constitutes actionable fraud and abuse of the legal process.

111.   **Krause v. Bennett, 887 F.2d 362, 371 (2d Cir. 1989):** In *Krause*, the court emphasized that officers may not deliberately misrepresent the nature of their information by claiming firsthand knowledge when it is actually based on hearsay. Webb, Johnson, and Hathaway's petition mirrors this violation: the petition explicitly stated that they "knew" Donahue made certain statements, rather than framing the statements as alleged or reported. This false claim of personal knowledge constitutes deliberate misrepresentation, just as in *Krause*, and demonstrates intentional deception designed to give the court a false impression of credibility and certainty, which is legally impermissible.

112.   **Whiteley v. Warden, 401 U.S. 560, 568 (1971):** *Whiteley* makes clear that conclusory allegations from officials without personal knowledge cannot justify an arrest or detention. Fabricating "firsthand" accounts from secondhand information is unlawful. Webb, Johnson, and Hathaway's petition paralleled this misconduct: they presented conclusory assertions as if derived from their own knowledge, rather than as reports or hearsay. By fabricating personal knowledge of Donahue's alleged statements, they improperly sought to create a legal justification

for action that had no factual basis, engaging in precisely the type of fraudulent conduct condemned in *Whiteley*.

113. **Morrison v. Lefevre, 592 F. Supp. 1052, 1071 (S.D.N.Y. 1984):** In *Morrison*, prison officials violated due process by fabricating psychiatric reports to justify confinement. Webb, Johnson, and Hathaway engaged in similar misconduct by fabricating the petition's statements, presenting them as facts they personally knew, rather than reporting them as allegations. This intentional misrepresentation was used to support a civil commitment-like process against Donahue, effectively substituting false statements for actual evidence, thereby violating procedural due process protections.

114. **Rodriguez v. City of New York, 72 F.3d 1051, 1061–62 (2d Cir. 1995):** *Rodriguez* established that the fabrication of evidence that results in involuntary commitment is actionable under § 1983. By presenting the petition as if they personally knew Donahue made certain statements, Webb, Johnson, and Hathaway fabricated evidence intended to induce legal action against him. Their statements were not based on any firsthand observation, but they were framed as certain knowledge. This deliberate creation of false evidence to support

involuntary legal consequences directly parallels the misconduct in *Rodriguez*, making it actionable under civil rights law.

115.   If Plaintiff DONAHUE had genuinely intended to engage in so-called "suicide by police," Plaintiff DONAHUE had multiple opportunities to escalate interactions with law enforcement on October 19, 2024, yet did not do so. Instead, Plaintiff DONAHUE accepted the earlier traffic citation without incident and, during the subsequent involuntary detention, did not assault officers, attempt to seize weapons, threaten violence, or actively engage in combative resistance. Plaintiff alleges that such conduct was objectively inconsistent with Defendants' claims that Plaintiff desired to provoke a lethal confrontation with law enforcement.

116.   At the time Defendant WEBB prepared and/or approved the involuntary petition concerning Plaintiff DONAHUE, Defendant WEBB had never personally met Plaintiff DONAHUE, had never observed Plaintiff DONAHUE in person, had never heard Plaintiff DONAHUE speak, and possessed no firsthand knowledge regarding Plaintiff DONAHUE's actual demeanor, conduct, or mental state, instead relying substantially and/or exclusively upon representations supplied by Defendants JOHNSON, HATHAWAY, STUMPF, and DOES 1 through 6, inclusive.

117.   It should further be known to the Court that, subsequent to the involuntary petition proceedings described herein, Plaintiff DONAHUE was

COMPLAINT FOR DAMAGES

independently evaluated by Defendant WEBB under a different legal name and/or alias unbeknownst to Defendant WEBB at the time of the evaluation.

118.   During that later evaluation conducted on March 2, 2025, Defendant WEBB concluded, inter alia, that Plaintiff DONAHUE "is not suffering from any psychiatric illness at this time or at any time in the past," "has never had impairment from a psychiatric illness," and "does not show any signs or symptoms consistent with depressive, anxiety, or psychotic disorders."

119.   Defendant WEBB further documented that Plaintiff DONAHUE had "a positive outlook on life," "no prior history of suicide or harm to others," "no substance abuse," and that Plaintiff's "risk of suicide or harm to others is minimal," additionally concluding there was "no need for psychological evaluation based on my findings."

120.   Plaintiff DONAHUE alleges that these later findings by Defendant WEBB materially contradict the earlier allegations used to justify Plaintiff DONAHUE's involuntary detention and psychiatric confinement and substantially undermine the credibility, reliability, and factual basis of the prior petition and related representations advanced against Plaintiff DONAHUE.

121.   As a direct and proximate result of the alarming, inflammatory, and allegedly false representations described herein, Plaintiff DONAHUE was

COMPLAINT FOR DAMAGES

repeatedly re-petitioned and subjected to continued involuntary confinement and psychiatric proceedings. Plaintiff alleges that subsequent petitions and continued detention were driven primarily by fear generated from the original allegations rather than by any newly discovered evidence, independent findings, or objectively observed deterioration in Plaintiff DONAHUE's mental capacity or dangerousness.

122.   Throughout his confinement, Plaintiff DONAHUE repeatedly informed numerous doctors, psychiatric staff, nurses, evaluators, and other personnel, and DOES 16-50, inclusive that he possessed the complete recording of the underlying Solari Human Services call on his cellular telephone and that the recording would materially contradict the allegations being made against him. Plaintiff alleges that Defendants and staff repeatedly refused and/or failed to review or listen to the recording before continuing proceedings and treatment against Plaintiff DONAHUE.

123.   During the approximately thirty (30) days Plaintiff DONAHUE remained involuntarily confined, Plaintiff alleges he was subjected to a prolonged and deeply distressing detention during which he was deprived of numerous constitutional and civil liberties, including the ability to participate in the 2024 presidential election. Plaintiff DONAHUE further alleges that, during this confinement, he was physically assaulted by staff after attempting to assist an

elderly patient experiencing a seizure and at risk of falling to the ground, and was additionally assaulted by other patients and staff on multiple occasions, resulting in the generation of various Phoenix Police Department incident reports, including but not limited to Report Numbers 2024-01559438, 24-1565582, 24-1614415, 24-1566173, and 2024-1646384.

123.    Defendants NAMATOVU, WILLIAMS, UPC URGENT PSYCHIATRIC CARE, LLC, CONNECTIONS HEALTH SOLUTIONS, INC., and DOES 16 through 30, inclusive, repeatedly relied upon and recycled the same original allegations, accusations, and inflammatory narratives supplied by law enforcement and prior petition materials without independently verifying the underlying claims or developing materially new evidence demonstrating that Plaintiff DONAHUE posed a genuine danger to himself or others.

124.    Rather than conducting a neutral and objective evaluation, Defendants NAMATOVU, WILLIAMS, UPC URGENT PSYCHIATRIC CARE, LLC, CONNECTIONS HEALTH SOLUTIONS, INC., and DOES 16 through 30, inclusive, allegedly amplified and expanded upon prior allegations by adding speculative, exaggerated, and/or unsupported concerns regarding Plaintiff DONAHUE's sexuality, behavior, and mental state despite the absence of

COMPLAINT FOR DAMAGES

42

corroborating evidence and despite Plaintiff DONAHUE repeatedly denying the allegations being attributed to him.

125. During Plaintiff DONAHUE's confinement at UPC Phoenix, Plaintiff DONAHUE attempted to assist an elderly patient who was actively suffering a seizure and in danger of falling from his chair to the floor. In response to Plaintiff DONAHUE's intervention, Defendants DOES 16 through 30, inclusive, physically assaulted Plaintiff DONAHUE rather than reasonably assessing the circumstances or the medical emergency involving the other patient.

126. Plaintiff DONAHUE further alleges that Defendants NAMATOVU, WILLIAMS, UPC URGENT PSYCHIATRIC CARE, LLC, CONNECTIONS HEALTH SOLUTIONS, INC., and DOES 16 through 30, inclusive, failed to provide a reasonably safe environment during Plaintiff DONAHUE's confinement and failed to adequately protect Plaintiff DONAHUE from violent assaults and threats by other patients despite actual and constructive knowledge of escalating tensions and dangerous conditions within the facility.

127. After Plaintiff DONAHUE was allegedly assaulted by another patient, Defendants DOES 16 through 30, inclusive, nevertheless placed and/or kept Plaintiff DONAHUE in close proximity to the same patient despite

knowledge of the prior altercation and the foreseeable risk of additional violence, thereby demonstrating deliberate indifference to Plaintiff DONAHUE's safety and wellbeing.

128.    Plaintiff DONAHUE repeatedly informed Defendants NAMATOVU, WILLIAMS, UPC URGENT PSYCHIATRIC CARE, LLC, CONNECTIONS HEALTH SOLUTIONS, INC., and DOES 16 through 30, inclusive, that he possessed the complete Solari Human Services recording that would materially contradict the allegations used to justify his detention and continued confinement. Plaintiff alleges Defendants nevertheless refused and/or failed to review the recording prior to continuing proceedings and treatment against him.

129.    Despite the absence of independently verified evidence, Defendants NAMATOVU, WILLIAMS, UPC URGENT PSYCHIATRIC CARE, LLC, CONNECTIONS HEALTH SOLUTIONS, INC., and DOES 16 through 30, inclusive, continued to support Plaintiff DONAHUE's involuntary confinement through repeated petitions, evaluations, certifications, and treatment recommendations substantially derived from the same underlying allegations originally supplied by Defendant EVERTS and law enforcement personnel.

COMPLAINT FOR DAMAGES

44

130.    Defendants MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a VALLEYWISE BEHAVIORAL HOSPITAL, JANAJREH, GOLEBIOWSKI, PIKE, and DOES 31 through 50, inclusive, continued Plaintiff DONAHUE's involuntary confinement and treatment based substantially upon the same original allegations, reports, petitions, and narratives previously generated by Defendants EVERTS, JOHNSON, HATHAWAY, STUMPF, WEBB, UPC, and CONNECTIONS, rather than upon materially new findings, independently verified evidence, or objectively observed dangerous conduct by Plaintiff DONAHUE.

131.    Defendants JANAJREH and GOLEBIOWSKI jointly conspired to falsely diagnosed and/or characterized Plaintiff DONAHUE as suffering from schizophrenia and/or psychotic illness despite Plaintiff DONAHUE allegedly not exhibiting the diagnostic criteria commonly associated with schizophrenia, including delusions, hallucinations, disorganized speech, grossly disorganized behavior, catatonia, or clinically significant negative symptoms. Plaintiff DONAHUE alleges that such conclusions were unsupported, reckless, predetermined, and substantially derived from recycled allegations and institutional confirmation bias rather than objective psychiatric evaluation.

132.    Plaintiff DONAHUE repeatedly denied experiencing hallucinations, denied hearing voices, denied delusional beliefs, denied suicidal ideation, denied

homicidal ideation, and repeatedly attempted to explain the context and falsity of the allegations being attributed to him. Plaintiff DONAHUE further repeatedly informed Defendants that he possessed the complete Solari Human Services recording which would materially contradict the allegations used to justify his continued confinement.

133.   Despite Plaintiff DONAHUE's repeated requests, Defendants MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a VALLEYWISE BEHAVIORAL HOSPITAL, JANAJREH, GOLEBIOWSKI, PIKE, and DOES 31 through 50, inclusive, allegedly refused and/or failed to review the underlying Solari Human Services call recording before continuing to support Plaintiff DONAHUE's involuntary detention, psychiatric confinement, diagnosis, and treatment recommendations.

134.   At one point during Plaintiff DONAHUE's confinement, Plaintiff DONAHUE was temporarily permitted access to his cellular telephone and personally recorded Defendant PIKE refusing to review the Solari Human Services recording, during which Defendant PIKE stated, in substance, "that's not what I do," despite Plaintiff DONAHUE expressly informing Defendant PIKE that the

recording directly related to the factual basis for his detention and continued confinement.

135. Plaintiff DONAHUE further alleges that Defendants MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a VALLEYWISE BEHAVIORAL HOSPITAL, JANAJREH, GOLEBIOWSKI, PIKE, and DOES 31 through 50, inclusive, demonstrated deliberate indifference toward exculpatory evidence, failed to conduct reasonably objective evaluations, and instead relied upon prior institutional narratives, unsupported assumptions, and escalating psychiatric labels to justify continued confinement and forced treatment against Plaintiff DONAHUE.

136. Shockingly, on or about November 10, 2024, while confined at Defendant MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a VALLEYWISE BEHAVIORAL HOSPITAL, Plaintiff DONAHUE was physically restrained and held down by approximately ten or more staff members and forcibly injected with unknown medication(s) and/or chemical agents without a valid court order authorizing involuntary medication. Plaintiff DONAHUE alleges that this occurred despite Plaintiff DONAHUE not having engaged in violence, assaultive conduct, or other behavior presenting an immediate emergency during his confinement, and further alleges that such actions constituted unreasonable force, unlawful bodily intrusion, denial of due process, cruel and unusual punishment,

COMPLAINT FOR DAMAGES

47

and violations of Plaintiff DONAHUE's rights under the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. Plaintiff further references Phoenix Police Report Number 2024-1680215 in relation to this incident.

137. Following the forced injection and restraint described herein, Plaintiff DONAHUE alleges that Defendants and/or staff failed to properly secure, stabilize, and monitor him despite his compromised physical condition, causing Plaintiff DONAHUE to fall and strike his head against the concrete floor. Plaintiff DONAHUE alleges that the impact resulted in broken teeth, head trauma, neurological injury, and permanent scarring and damage affecting his frontal lobe region, causing ongoing physical, cognitive, emotional, and neurological harm.

138. Throughout Plaintiff DONAHUE's confinement at Defendants UPC Phoenix and MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a VALLEYWISE BEHAVIORAL HOSPITAL, Plaintiff DONAHUE did not engage in violent assaults against staff and repeatedly attempted to verbally advocate for himself, contest the allegations against him, and secure review of the underlying recording and evidence referenced herein.

139. Upon information and belief, Behavioral Health Technician Jamal, identified herein as one of DOES 31 through 50, was terminated and/or removed from employment at VALLEYWISE following repeated physical altercations,

COMPLAINT FOR DAMAGES

48

assaults, and/or misconduct directed toward Plaintiff DONAHUE during the course of Plaintiff's involuntary confinement.

140. Upon information and belief, Behavioral Health Technician Richard, identified herein as one of DOES 31 through 50, was likewise terminated and/or removed from employment at VALLEYWISE following repeated physical altercations, assaults, and/or misconduct directed toward Plaintiff DONAHUE during the course of Plaintiff's involuntary confinement.

141. Defendants JOHNSON, HATHAWAY, WEBB, EVERTS, MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a VALLEYWISE BEHAVIORAL HOSPITAL, JANAJREH, GOLEBIOWSKI, PIKE, and DOES 1 through 50, inclusive, ultimately failed in their efforts to continue prosecuting and/or confining Plaintiff DONAHUE through the involuntary mental-health proceedings described herein, and the matter was dismissed on or about November 19, 2024. Plaintiff DONAHUE alleges that the termination of the proceedings in his favor supports his claims arising from the unlawful seizure, detention, confinement, and prosecution-like proceedings imposed against him. See Thompson v. Clark.

142. Although involuntary mental-health proceedings are formally labeled as "civil" proceedings, the process functioned as a prosecution against Plaintiff DONAHUE in both purpose and effect, wherein STATE, COUNTY, and CITY

COMPLAINT FOR DAMAGES

49

actors invoked governmental authority and judicial process to seize, accuse, transport, confine, restrain, medicate, and deprive Plaintiff DONAHUE of his liberty based upon alleged dangerousness and purported wrongdoing.

143.  There are no ordinary civil proceedings which permit SCOTTSDALE, VALLEYWISE, COUNTY, and STATE actors to handcuff an individual, forcibly remove and transport him against his will, indefinitely confine him inside secured facilities, strip him of freedom of movement and bodily autonomy, repeatedly petition against him through judicial process, and forcibly inject him with psychiatric medication. Plaintiff DONAHUE alleges that the involuntary proceedings described herein were prosecutorial and punitive in nature and therefore subject to heightened constitutional scrutiny under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, including the principles recognized in Thompson v. Clark.

144.  As complained of herein above, none of the defendants to this action had a warrant for plaintiff's arrest, nor probable cause to believe that plaintiff had committed a crime, nor reasonable suspicion of criminality afoot by the plaintiff, or any probable cause that the plaintiff was a danger to anyone or anything.

145.  Accordingly, the seizure of Plaintiff DONAHUE by Defendants JOHNSON, LEDO, WILLIAMS, HATHAWAY, STUMPF, the CITY OF SCOTTSDALE, and DOES 1 through 10, inclusive, through the threatened and

COMPLAINT FOR DAMAGES

actual use of force, detention, restraint, and involuntary transport, constituted an unlawful and unreasonable seizure of Plaintiff DONAHUE in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

146. Accordingly, the actions of Defendants EVERTS, SOLARI, INC., and DOES 11 through 15, inclusive, acting jointly and in concert with state actors and under color of state law, including through the initiation, procurement, and continuation of the unlawful detention and seizure of Plaintiff DONAHUE, constituted violations of Plaintiff DONAHUE's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution. See Dwares v. City of New York.

147. Accordingly, the actions of Defendants NAMATOVU, EVERETT WILLIAMS, UPC URGENT PSYCHIATRIC CARE, LLC, CONNECTIONS HEALTH SOLUTIONS, INC., and DOES 16 through 30, inclusive, including their participation in the continued detention, confinement, forced treatment, and deprivation of liberty imposed upon Plaintiff DONAHUE under color of state law, constituted unlawful and unreasonable seizures and deprivations of Plaintiff DONAHUE's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.

148. Accordingly, the actions of Defendants MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a VALLEYWISE BEHAVIORAL

COMPLAINT FOR DAMAGES

51

HOSPITAL, JANAJREH, GOLEBIOWSKI, PIKE, and DOES 31 through 50, inclusive, including their participation in the continued involuntary confinement, forced medication, restraint, and deprivation of liberty imposed upon Plaintiff DONAHUE under color of state law, constituted unlawful and unreasonable seizures and violations of Plaintiff DONAHUE's rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

149.    As a result of the aforementioned defendants' unlawful conduct Plaintiff suffered personal injuries, economic losses, great humiliation, embarrassment, and mental suffering, all to PLAINTIFF's damage.

150.    Plaintiff is entitled to seek damages suffered as a result of the above-described conduct pursuant to 28 U.S.C. §§ 1983 and 1988.

151.    As a direct and proximate result of the actions of Defendants JOHNSON, LEDO, WILLIAMS, HATHAWAY, STUMPF, the CITY OF SCOTTSDALE, and DOES 1 through 10, inclusive, as complained of herein, Plaintiff DONAHUE suffered substantial physical, emotional, psychological, reputational, and constitutional injuries; incurred medical, psychiatric, legal, and related expenses; suffered loss of liberty and deprivation of civil rights; and sustained other special, compensatory, and general damages in an amount to be proven at trial, presently estimated to exceed $100,000,000.00.

152.    As a direct and proximate result of the actions of Defendants EVERTS, SOLARI, INC., and DOES 11 through 15, inclusive, Plaintiff

COMPLAINT FOR DAMAGES

52

DONAHUE suffered substantial emotional distress, reputational harm, unlawful seizure, loss of liberty, prolonged confinement, and other constitutional and compensatory damages in an amount to be proven at trial, presently estimated to exceed $40,000,000.00.

153.    The actions of Defendants EVERTS and DOES 11 through 15, inclusive, were intentional, malicious, reckless, and undertaken with conscious disregard for the foreseeable consequences of falsely initiating and perpetuating proceedings against Plaintiff DONAHUE, thereby entitling Plaintiff DONAHUE to punitive and exemplary damages in an amount to be proven at trial, presently estimated to exceed $10,000,000.00.

154.    As a direct and proximate result of the actions of Defendants NAMATOVU, EVERETT WILLIAMS, UPC URGENT PSYCHIATRIC CARE, LLC, CONNECTIONS HEALTH SOLUTIONS, INC., and DOES 16 through 30, inclusive, Plaintiff DONAHUE suffered prolonged unlawful confinement, emotional trauma, physical injury, deprivation of liberty, humiliation, reputational injury, medical damages, and other special and general damages in an amount to be proven at trial, presently estimated to exceed $100,000,000.00.

COMPLAINT FOR DAMAGES

155.   The actions of Defendants NAMATOVU, EVERETT WILLIAMS, and DOES 16 through 30, inclusive, were malicious, oppressive, reckless, and undertaken with deliberate indifference toward Plaintiff DONAHUE's constitutional rights and personal safety, thereby entitling Plaintiff DONAHUE to punitive and exemplary damages in an amount to be proven at trial, presently estimated to exceed $10,000,000.00.

156.   As a direct and proximate result of the actions of Defendants MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a VALLEYWISE BEHAVIORAL HOSPITAL, JANAJREH, GOLEBIOWSKI, PIKE, and DOES 31 through 50, inclusive, Plaintiff DONAHUE suffered severe physical injuries, neurological injury, dental injury, emotional trauma, forced medication, unlawful confinement, deprivation of bodily autonomy, reputational harm, and other compensatory and general damages in an amount to be proven at trial, presently estimated to exceed $100,000,000.00.

157.   The actions of Defendants JANAJREH, GOLEBIOWSKI, PIKE, and DOES 31 through 50, inclusive, were malicious, oppressive, reckless, and undertaken with deliberate indifference toward Plaintiff DONAHUE's constitutional rights, bodily integrity, medical autonomy, and personal safety,

COMPLAINT FOR DAMAGES

54

thereby entitling Plaintiff DONAHUE to punitive and exemplary damages in an amount to be proven at trial, presently estimated to exceed $10,000,000.00, exclusive of claims asserted against Defendant VALLEYWISE.

158. The actions by said defendants were committed maliciously, oppressively and in reckless disregard of plaintiff's constitutional rights, sufficient for an award of punitive / exemplary damages against all defendants and each of them, save defendant SCOTTSDALE, VALLEYWISE in an amount to be proven at trial in excess of $200,000,000.00.

**SECOND CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983**
**Violation of First Amendment Rights - Freedom of Speech & Freedom of Religion / Religious Practice**
**(Against all Defendants)**

159. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 158, inclusive, above, as if set forth in full herein.

160. The conduct of Defendants JOHNSON, LEDO, WILLIAMS, HATHAWAY, STUMPF, WEBB, EVERTS, SOLARI, INC., NAMATOVU, EVERETT WILLIAMS, UPC URGENT PSYCHIATRIC CARE, LLC, CONNECTIONS HEALTH SOLUTIONS, INC., MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a VALLEYWISE BEHAVIORAL HOSPITAL, JANAJREH, GOLEBIOWSKI, PIKE, and DOES 1 through 50, inclusive, violated Plaintiff DONAHUE's rights under the First Amendment to the United States Constitution, including his rights to freedom of speech, freedom of

COMPLAINT FOR DAMAGES

55

expression, freedom to petition the government for redress of grievances, and free exercise of religion.

161.    Plaintiff DONAHUE repeatedly criticized law-enforcement conduct, discussed litigation and complaints against governmental actors, questioned the conduct of Defendants, and expressed opinions and frustrations protected by the First Amendment to the United States Constitution. Defendants unlawfully treated such protected speech and expression as evidence of dangerousness, mental illness, and justification for detention and punishment.

162.    Plaintiff DONAHUE did not communicate a constitutionally unprotected "true threat," did not directly threaten imminent unlawful violence, and did not engage in criminal conduct sufficient to justify the extreme governmental actions undertaken against him. Nevertheless, Defendants distorted, exaggerated, mischaracterized, and weaponized Plaintiff DONAHUE's speech in order to justify seizure, detention, forced confinement, forced medication, and prolonged involuntary proceedings against him.

163.    A substantial and motivating factor behind Defendants' actions against Plaintiff DONAHUE was Plaintiff DONAHUE's protected speech, criticism of law enforcement and governmental actors, intent to seek legal redress, refusal to submit to Defendants' narratives, and refusal to abandon his sincerely held beliefs concerning bodily autonomy and psychiatric medication.

COMPLAINT FOR DAMAGES

56

164.   Plaintiff DONAHUE repeatedly informed Defendants that forced psychiatric medication and synthetic pharmacological intervention conflicted with his sincerely held religious beliefs and practices concerning preservation of the body and personal autonomy. Despite such notice, Defendants continued to pursue forced psychiatric treatment and involuntary medication against Plaintiff DONAHUE without reasonably accommodating his religious objections.

165.   The conduct of Defendants described herein would chill a person of ordinary firmness from exercising constitutionally protected speech, criticizing governmental actors, petitioning the government for redress of grievances, asserting religious objections, or refusing unwanted psychiatric medication and treatment.

166.   As a direct and proximate result of Defendants' conduct, Plaintiff DONAHUE suffered severe emotional distress, physical injury, unlawful deprivation of liberty, forced medication, reputational harm, medical damages, psychological trauma, lost opportunities, and other compensatory damages in an amount to be proven at trial.

167.   The actions of Defendants, and each of them, were intentional, malicious, oppressive, reckless, and undertaken with deliberate indifference toward Plaintiff DONAHUE's constitutional rights, thereby entitling Plaintiff DONAHUE to punitive and exemplary damages against the individual Defendants in an amount

COMPLAINT FOR DAMAGES

57

to be proven at trial, exclusive of claims asserted against governmental entities not subject to punitive damages under applicable law.

168.   As a direct and proximate result of said adverse actions taken against said plaintiff by said defendants as described above, plaintiff suffered serious bodily injury, severe mental and emotional distress, medical and psychological costs and expenses, lost wages / profits, attorney's fees and other special damages; all in an amount to be proven at trial, in excess of $400,000,000.00.

169.   The actions of defendants and each of them, as complained of herein, were done maliciously and in reckless disregard of plaintiff's constitutional rights sufficient for an award of punitive / exemplary damages against said defendants, save defendant SCOTTSDALE, VALLEYWISE in an amount to be proven at trial, in excess of $200,000,000.00.

**THIRD CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983**
**Violation of Fourth Amendment Rights –**
**Excessive/Unreasonable Use of Force on Person**
**(Against Defendants JOHNSON, LEDO, WILLIAMS, HATHAWAY,**
**STUMPF,  DOES 1 through 6,, UPC URGENT PSYCHIATRIC CARE, LLC,**
**CONNECTIONS HEALTH SOLUTIONS, INC., DOES 16 through 30,**
**MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a**
**VALLEYWISE BEHAVIORAL HOSPITAL, and DOES 31 through 50)**

170.   Plaintiff hereby realleges and re-incorporates by reference the allegations set forth in paragraphs 1 through 169 inclusive, above, as if set forth in full herein.

COMPLAINT FOR DAMAGES

171.    Defendants JOHNSON, LEDO, WILLIAMS, HATHAWAY, STUMPF, and DOES 1 through 6, inclusive, used objectively unreasonable, excessive, punitive, and unlawful force against Plaintiff DONAHUE during his seizure and detention by forcibly placing Plaintiff DONAHUE into a full-body restraint system and restrictive helmet, forcing Plaintiff DONAHUE onto and across the ground while handcuffed, tightening restraints to an extreme and painful degree, and otherwise physically restraining Plaintiff DONAHUE despite Plaintiff DONAHUE not posing an immediate threat of violence to officers or others.

172.    At the time such force was used, Plaintiff DONAHUE was unarmed, handcuffed, substantially compliant, not attempting to flee, and not actively assaulting officers. Plaintiff DONAHUE's alleged resistance consisted primarily of refusing to voluntarily walk to the patrol vehicle. Under the standards established in Graham v. Connor, the force utilized by Defendants JOHNSON, LEDO, WILLIAMS, HATHAWAY, STUMPF, and DOES 1 through 6, inclusive, was objectively unreasonable under the totality of circumstances.

173.    Defendants UPC URGENT PSYCHIATRIC CARE, LLC, CONNECTIONS HEALTH SOLUTIONS, INC., and DOES 16 through 30, inclusive, further subjected Plaintiff DONAHUE to excessive, abusive, unreasonable, and unlawful force throughout Plaintiff DONAHUE's confinement at UPC Phoenix, including physical assaults by staff, permitting and failing to prevent assaults by other patients, retaliatory treatment after Plaintiff DONAHUE

COMPLAINT FOR DAMAGES

59

attempted to assist an elderly patient suffering a seizure, and knowingly placing Plaintiff DONAHUE in proximity to individuals who had previously assaulted him.

174. Defendants UPC URGENT PSYCHIATRIC CARE, LLC, CONNECTIONS HEALTH SOLUTIONS, INC., and DOES 16 through 30, inclusive, acted with deliberate indifference toward Plaintiff DONAHUE's safety, bodily integrity, and constitutional rights by failing to protect Plaintiff DONAHUE from foreseeable violence and by directly participating in, authorizing, condoning, ratifying, and/or failing to intervene in abusive conduct against Plaintiff DONAHUE.

175. Defendants MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a VALLEYWISE BEHAVIORAL HOSPITAL, and DOES 31 through 50, inclusive, likewise subjected Plaintiff DONAHUE to excessive, unreasonable, abusive, and unlawful force during Plaintiff DONAHUE's confinement at VALLEYWISE, including repeated assaults by staff, repeated assaults by other patients, physical restraint, and the forced involuntary injection of psychiatric medication and/or chemical agents on or about November 10, 2024, despite Plaintiff DONAHUE not presenting an immediate violent emergency requiring such extreme force.

176. On or about November 10, 2024, Defendants and/or staff acting under the authority of VALLEYWISE physically restrained Plaintiff DONAHUE with

overwhelming force involving approximately ten or more staff members and forcibly injected Plaintiff DONAHUE with unknown medication(s) and/or chemical agents without a valid court order authorizing involuntary medication and despite Plaintiff DONAHUE's repeated religious objections and lack of violent conduct.

177.    Following the forced injection and restraint, Defendants and/or staff further failed to adequately secure and monitor Plaintiff DONAHUE, causing Plaintiff DONAHUE to fall and strike his head against a concrete floor, resulting in dental injury, head trauma, neurological injury, and permanent physical and emotional damages.

178.    The conduct of Defendants described herein constituted objectively unreasonable and excessive force in violation of Plaintiff DONAHUE's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

179.    As a direct and proximate result of Defendants' conduct, Plaintiff DONAHUE suffered substantial physical injury, neurological injury, emotional distress, psychological trauma, humiliation, pain and suffering, medical expenses, loss of liberty, reputational harm, lost opportunities, and other special, general, compensatory, and constitutional damages in an amount to be proven at trial.

180.    The actions of the individual Defendants, and each of them, were intentional, malicious, oppressive, reckless, and undertaken with deliberate indifference toward Plaintiff DONAHUE's constitutional rights and bodily

COMPLAINT FOR DAMAGES

61

integrity, thereby entitling Plaintiff DONAHUE to punitive and exemplary damages against said individual Defendants in an amount to be proven at trial, exclusive of governmental entities not subject to punitive damages under applicable law.

## FOURTH CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. § 1983
**Violation of Fourth, Eighth, and Fourteenth Amendment Rights –
Malicious Prosecution
(Against Defendants JOHNSON, HATHAWAY, SOLARI, INC., EVERTS,
UPC URGENT PSYCHIATRIC CARE, LLC, CONNECTIONS HEALTH
SOLUTIONS, INC., NAMATOVU, PIKE, GOLEBIOWSKI, JANAJREH,
MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a
VALLEYWISE BEHAVIORAL HOSPITAL, and DOES 1 through 6 and 16
through 50, inclusive)**

181.  Plaintiff hereby realleges and re-incorporates by reference the allegations set forth in paragraphs 1 through 180 inclusive, above, as if set forth in full herein.

182.  The involuntary mental-health proceedings initiated and continued against Plaintiff operated as a prosecutorial mechanism through which Defendants invoked the authority of the State of Arizona to seize, confine, restrain, and medicate Plaintiff against his will through, and simultaneously without judicial process.

183.  Although labeled "civil," the proceedings at issue resulted in substantial restraints upon Plaintiff's liberty equivalent in nature to custodial criminal detention, including involuntary seizure, transportation, confinement, loss

COMPLAINT FOR DAMAGES

62

of freedom of movement, deprivation of autonomy, compelled compliance with state authority, and threatened and/or actual forced medication.

184.    Defendants caused and/or continued such proceedings without lawful justification, without probable cause to believe Plaintiff presented a lawful basis for involuntary detention, and through materially false, misleading, reckless, and/or incomplete representations regarding Plaintiff's mental state and alleged dangerousness.

185.    The proceedings ultimately terminated in Plaintiff's favor through dismissal and without any adjudication establishing lawful grounds for continued involuntary detention or commitment.

186.    Under Thompson v. Clark, Plaintiff need only demonstrate that the proceedings terminated in a manner not inconsistent with innocence. Plaintiff therefore satisfies the favorable-termination requirement for a Fourth Amendment malicious prosecution claim under 42 U.S.C. § 1983.

187.    By initiating, procuring, continuing, ratifying, and/or materially participating in these proceedings and resulting seizures, Defendants violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

188.    As a direct and proximate result of Defendants' conduct, Plaintiff DONAHUE suffered substantial physical injury, neurological injury, emotional distress, psychological trauma, humiliation, pain and suffering, medical expenses,

COMPLAINT FOR DAMAGES

63

loss of liberty, reputational harm, lost opportunities, and other special, general, compensatory, and constitutional damages in an amount to be proven at trial.

189. The actions of the individual Defendants, and each of them, were intentional, malicious, oppressive, reckless, and undertaken with deliberate indifference toward Plaintiff DONAHUE's constitutional rights and bodily integrity, thereby entitling Plaintiff DONAHUE to punitive and exemplary damages against said individual Defendants in an amount to be proven at trial, exclusive of governmental entities not subject to punitive damages under applicable law.

## FIFTH CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. § 1983
**FEDERAL CLAIM FOR FAILURE TO PROPERTY TRAIN AND FOR FAILURE TO PROPERLY HIRE / FIRE / DISCIPLINE / MONELL LIABILITY**
**(Against Defendants CITY OF SCOTTSDALE, REYNOLDS, MYERS, LEDUC, SLAVIN, HINER, WALTHER, CATON, MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a VALLEYWISE BEHAVIORAL HOSPITAL, and DOES 7 through 10 and 31 through 50, inclusive)**

190. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 189, inclusive, above, as if set forth in full herein.

191. As alleged herein, Defendants JOHNSON, LEDO, WILLIAMS, HATHAWAY, STUMPF, WEBB, JANAJREH, GOLEBIOWSKI, PIKE, DOES 1 through 6, and DOES 31 through 50, inclusive, deprived Plaintiff DONAHUE of

COMPLAINT FOR DAMAGES

rights secured by the Constitution and laws of the United States, including rights protected by the First, Fourth, Eighth, and Fourteenth Amendments.

192.    Defendant CITY OF SCOTTSDALE, through its policymakers, supervisors, command staff, customs, practices, training failures, ratification, and deliberate indifference, maintained policies, customs, and/or practices that were inadequate to properly train, supervise, monitor, investigate, discipline, and control Scottsdale Police Department personnel concerning: (1) constitutional limitations on involuntary detention and mental-health seizures; (2) standards governing probable cause and reasonable suspicion; (3) the handling of protected speech and criticism directed toward law enforcement; (4) retaliatory policing; (5) use of force against nonviolent individuals; (6) use of full-body restraints and restrictive devices; (7) duties to investigate exculpatory evidence; and (8) constitutional protections applicable to individuals experiencing alleged mental-health crises.

193.    Defendants REYNOLDS, MYERS, LEDUC, SLAVIN, HINER, WALTHER, and CATON possessed supervisory, policymaking, disciplinary, investigatory, managerial, and/or ratification authority within Defendant CITY OF SCOTTSDALE and/or the Scottsdale Police Department and were deliberately indifferent to the constitutional violations described herein.

194.    Following Plaintiff DONAHUE's complaints, reports, objections, and litigation activities concerning the conduct complained of herein, Defendants REYNOLDS, MYERS, LEDUC, SLAVIN, HINER, WALTHER, and CATON

COMPLAINT FOR DAMAGES

65

allegedly failed and/or refused to conduct meaningful investigations into Plaintiff DONAHUE's allegations and instead ratified, approved, excused, justified, concealed, and/or endorsed the conduct of subordinate officers including Defendants JOHNSON, LEDO, WILLIAMS, HATHAWAY, and STUMPF.

195.    Defendant HINER, acting through the Scottsdale Police Department Internal Affairs process, allegedly refused to meaningfully investigate Plaintiff DONAHUE's complaints and instead endorsed and/or stood by the conduct complained of herein despite Plaintiff DONAHUE repeatedly alleging fabricated statements, unlawful seizure, excessive force, unlawful searches, retaliatory conduct, and the refusal of officers to review materially exculpatory evidence.

196.    Plaintiff DONAHUE further alleges that Defendant REYNOLDS authorized and/or approved a future retaliatory and unlawful arrest and/or attempted arrest directed toward Plaintiff DONAHUE during or around May 2025 substantially because Plaintiff DONAHUE was "still suing the city," thereby further evidencing retaliatory custom, policy, ratification, and deliberate indifference toward constitutionally protected conduct.

197.    Defendant CITY OF SCOTTSDALE's customs, policies, failures to train, failures to supervise, failures to discipline, failures to investigate, and ratification of unconstitutional conduct were moving forces behind the violations of Plaintiff DONAHUE's constitutional rights and the injuries complained of herein. See Monell v. Department of Social Services.

198. Defendant MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a VALLEYWISE BEHAVIORAL HOSPITAL likewise maintained customs, policies, practices, failures to train, failures to supervise, failures to discipline, and deliberate indifference concerning: (1) involuntary psychiatric confinement; (2) forced medication; (3) use of physical restraints; (4) protection of patient civil rights; (5) review of exculpatory evidence; (6) prevention of patient and staff assaults; and (7) constitutional limitations governing involuntary psychiatric treatment.

199. Plaintiff DONAHUE alleges that Defendant VALLEYWISE, through supervisory staff, physicians, administrators, and DOES 31 through 50, inclusive, repeatedly ratified and continued Plaintiff DONAHUE's confinement, forced treatment, and deprivation of liberty despite repeated notice of allegedly exculpatory evidence, repeated denials by Plaintiff DONAHUE, lack of independently verified dangerous conduct, and repeated allegations of assault and abuse occurring within the facility.

200. Plaintiff DONAHUE further alleges that Defendant VALLEYWISE failed to adequately supervise, discipline, investigate, remove, and/or control staff members who physically assaulted Plaintiff DONAHUE during his confinement, including staff members identified herein as DOES 31 through 50, inclusive.

201. The policies, customs, failures to train, failures to supervise, ratification, and deliberate indifference of Defendant CITY OF SCOTTSDALE

COMPLAINT FOR DAMAGES

67

and Defendant VALLEYWISE were closely related to, and moving forces behind, the constitutional violations and injuries suffered by Plaintiff DONAHUE.

202.    As a direct and proximate result of the actions, customs, practices, ratification, deliberate indifference, and failures described herein, Plaintiff DONAHUE suffered unlawful seizure, prolonged confinement, physical injury, neurological injury, emotional distress, humiliation, reputational injury, medical expenses, deprivation of liberty, deprivation of constitutional rights, and other special, compensatory, and general damages in an amount to be proven at trial.

204.    SCOTTSDALE and VALLEYWISE's failure to train and its customs and practices are so closely related to the deprivation of plaintiff's rights as to be the moving force that ultimately caused plaintiff's injuries.

205.    As a direct and proximate result of the actions of defendants JOHNSON, LEDO, WILLIAMS, HATHAWAY, STUMPF, and DOES 1 through 10 and 31-50, inclusive, and each of them, as complained of herein, Plaintiff: 1) was substantially physically, mentally and emotionally injured; 2) incurred medical and psychological costs, bills and expenses; 3) and incurred other special and general damages, including attorney's fees, investigator fees and associated litigation costs and expenses; all in an amount to be proven at trial in excess of $400,000,000.00.

## SIXTH CAUSE OF ACTION
## COMMON LAW FALSE ARREST
### In Tandem with Violations of A.R.S. §§ 13-1303 and 13-403
### Excessive/Unreasonable Use of Force on Person
### (Against Defendants JOHNSON, LEDO, STUMPF, HATHAWAY, WILLIAMS, WEBB, EVERTS, SOLARI, INC., UPC URGENT PSYCHIATRIC CARE, LLC, CONNECTIONS HEALTH SOLUTIONS, INC., NAMATOVU, EVERETT WILLIAMS, MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a VALLEYWISE BEHAVIORAL HOSPITAL, JANAJREH, GOLEBIOWSKI, PIKE, SCOTTSDALE, and DOES 1 through 50, inclusive)

206.    Plaintiff hereby realleges and reincorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

207.    Defendants JOHNSON, LEDO, STUMPF, HATHAWAY, WILLIAMS, WEBB, EVERTS, SOLARI, INC., UPC URGENT PSYCHIATRIC CARE, LLC, CONNECTIONS HEALTH SOLUTIONS, INC., NAMATOVU, EVERETT WILLIAMS, MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a VALLEYWISE BEHAVIORAL HOSPITAL, JANAJREH, GOLEBIOWSKI, PIKE, and DOES 1 through 50, inclusive, intentionally caused, initiated, procured, participated in, ratified, prolonged, and/or continued the unlawful detention, confinement, restraint, seizure, involuntary transport, forced treatment, and deprivation of liberty imposed upon Plaintiff DONAHUE without lawful justification.

208.    At no time relevant herein did Plaintiff DONAHUE commit, attempt to commit, or threaten any criminal offense in the presence of Defendants, nor did Plaintiff DONAHUE present an objectively reasonable and immediate danger to himself or others sufficient to justify the extreme restraints upon liberty, bodily autonomy, confinement, forced treatment, and detention imposed against him.

COMPLAINT FOR DAMAGES

69

209. Defendants JOHNSON, LEDO, STUMPF, HATHAWAY, WILLIAMS, and DOES 1 through 6, inclusive, intentionally used force and violence against Plaintiff DONAHUE by handcuffing him, forcing him to the ground, placing him into a full-body restraint system, tightening restraints to an excessive and painful degree, and placing a restrictive hood and/or helmet over Plaintiff DONAHUE's head despite Plaintiff DONAHUE not engaging in violent assaultive behavior.

210. Defendants UPC URGENT PSYCHIATRIC CARE, LLC, CONNECTIONS HEALTH SOLUTIONS, INC., NAMATOVU, EVERETT WILLIAMS, DOES 16 through 30, inclusive, MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a VALLEYWISE BEHAVIORAL HOSPITAL, JANAJREH, GOLEBIOWSKI, PIKE, and DOES 31 through 50, inclusive, knowingly continued and prolonged Plaintiff DONAHUE's confinement and deprivation of liberty despite the absence of independently verified evidence establishing Plaintiff DONAHUE posed a lawful danger to himself or others and despite repeated notice of allegedly exculpatory evidence.

211. Defendants MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a VALLEYWISE BEHAVIORAL HOSPITAL, JANAJREH, GOLEBIOWSKI, PIKE, and DOES 31 through 50, inclusive, further restrained Plaintiff DONAHUE through physical force, involuntary medication, forced injections, physical restraint procedures, and continued confinement despite Plaintiff DONAHUE repeatedly objecting to such treatment and confinement.

212. Plaintiff DONAHUE did not consent to the detention, restraint, transport, confinement, touching, bodily restraint, forced medication, physical force, or offensive physical contact described herein.

COMPLAINT FOR DAMAGES

70

213.    The conduct of Defendants described herein constituted false arrest, false imprisonment, assault, battery, unlawful restraint, and offensive physical contact under Arizona common law.

214.    As a direct and proximate result of Defendants' intentional, reckless, malicious, and unlawful conduct, Plaintiff DONAHUE suffered physical injury, neurological injury, emotional distress, humiliation, deprivation of liberty, reputational harm, medical expenses, pain and suffering, psychological trauma, lost opportunities, and other compensatory and general damages in an amount to be proven at trial.

215.    The acts complained of herein were committed by Defendants while acting within the course and scope of their employment, agency relationships, contractual relationships, governmental authority, and/or actions under color of state law. Defendants CITY OF SCOTTSDALE, SOLARI, INC., UPC URGENT PSYCHIATRIC CARE, LLC, CONNECTIONS HEALTH SOLUTIONS, INC., and MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a VALLEYWISE BEHAVIORAL HOSPITAL are therefore liable to the extent permitted under Arizona law for the tortious acts of their employees, agents, contractors, supervisors, and personnel.

216.    The conduct of the individual Defendants described herein was intentional, malicious, oppressive, outrageous, reckless, and undertaken with conscious disregard toward Plaintiff DONAHUE's liberty, bodily integrity, constitutional rights, and personal safety, thereby entitling Plaintiff DONAHUE to punitive and exemplary damages against the individual Defendants in their individual capacities.

COMPLAINT FOR DAMAGES

71

**SEVENTH CAUSE OF ACTION**
**COMMON LAW NEGLIGENCE**
(Against Defendants JOHNSON, LEDO, STUMPF, HATHAWAY,
WILLIAMS, WEBB, EVERTS, SOLARI, INC., UPC URGENT
PSYCHIATRIC CARE, LLC, CONNECTIONS HEALTH SOLUTIONS,
INC., NAMATOVU, EVERETT WILLIAMS, MARICOPA COUNTY
SPECIAL HEALTHCARE DISTRICT d/b/a VALLEYWISE BEHAVIORAL
HOSPITAL, JANAJREH, GOLEBIOWSKI, PIKE, SCOTTSDALE, and
DOES 1 through 50, inclusive)

217. PLAINTIFF realleges each and every paragraph as if fully set forth herein.

218. Defendants JOHNSON, LEDO, STUMPF, HATHAWAY, WILLIAMS, WEBB, EVERTS, SOLARI, INC., UPC URGENT PSYCHIATRIC CARE, LLC, CONNECTIONS HEALTH SOLUTIONS, INC., NAMATOVU, EVERETT WILLIAMS, MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a VALLEYWISE BEHAVIORAL HOSPITAL, JANAJREH, GOLEBIOWSKI, PIKE, SCOTTSDALE, and DOES 1 through 50, inclusive, owed Plaintiff DONAHUE duties to act with reasonable care, competence, professionalism, objectivity, and constitutional regard in the investigation, reporting, evaluation, detention, treatment, supervision, confinement, and handling of Plaintiff DONAHUE.

219. Defendants breached their duties of reasonable care and acted negligently and/or grossly negligently in numerous respects, including but not limited to the following:

(a) Defendants failed to reasonably investigate and verify the allegations being attributed to Plaintiff DONAHUE before seizing, detaining, petitioning against, diagnosing, medicating, confining, and/or continuing proceedings against him;

COMPLAINT FOR DAMAGES

72

(b)    Defendants JOHNSON, LEDO, STUMPF, HATHAWAY, WEBB, EVERTS, SOLARI, INC., and DOES 1 through 15, inclusive, failed to review, obtain, preserve, and/or verify the underlying Solari Human Services recording before initiating and continuing extreme governmental and psychiatric interventions against Plaintiff DONAHUE;

(c)    Defendant SOLARI, INC. negligently failed to supervise, verify, review, investigate, and/or confirm the accuracy of the allegations and representations communicated by Defendant EVERTS before permitting and/or facilitating escalation to law enforcement and involuntary proceedings;

(d)    Defendants negligently and/or recklessly exaggerated, distorted, repeated, relied upon, and perpetuated unverified allegations portraying Plaintiff DONAHUE as dangerous, schizophrenic, homicidal, suicidal, and/or mentally unstable despite the absence of independently corroborated evidence supporting such conclusions;

(e)    Defendants JOHNSON, LEDO, STUMPF, HATHAWAY, WILLIAMS, and DOES 1 through 10, inclusive, failed to follow reasonable law-enforcement standards, training, policies, and procedures concerning detention, de-escalation, use of force, mental-health investigations, verification of information, and constitutional limitations on seizure and restraint;

COMPLAINT FOR DAMAGES

73

(f)   Defendants WEBB, NAMATOVU, EVERETT WILLIAMS, JANAJREH, GOLEBIOWSKI, PIKE, UPC URGENT PSYCHIATRIC CARE, LLC, CONNECTIONS HEALTH SOLUTIONS, INC., VALLEYWISE, and DOES 16 through 50, inclusive, failed to conduct reasonably objective evaluations and negligently relied upon recycled allegations and institutional narratives without independently verifying whether Plaintiff DONAHUE actually presented symptoms justifying involuntary confinement and forced treatment;

(g)   Defendants negligently failed to review or consider exculpatory evidence repeatedly offered by Plaintiff DONAHUE, including the underlying recording Plaintiff DONAHUE repeatedly stated would materially contradict the allegations against him;

(h)   Defendants negligently failed to protect Plaintiff DONAHUE from assaults, abuse, unreasonable force, foreseeable harm, and unsafe conditions during his confinement at UPC Phoenix and VALLEYWISE;

(i)   Defendants negligently and/or recklessly subjected Plaintiff DONAHUE to forced medication, physical restraint, prolonged confinement, and invasive psychiatric treatment without adequate investigation, objective justification, or proper constitutional safeguards.

COMPLAINT FOR DAMAGES

74

220.    As a direct and proximate result of Defendants' negligence and gross negligence, Plaintiff DONAHUE suffered severe physical injuries, neurological injury, dental injury, emotional distress, psychological trauma, humiliation, deprivation of liberty, reputational harm, medical expenses, pain and suffering, loss of constitutional rights, lost opportunities, and other special and general damages in an amount to be proven at trial.

221.    The acts complained of herein were committed by Defendants while acting within the course and scope of their employment, agency relationships, contractual authority, governmental authority, and/or actions under color of state law. Defendants CITY OF SCOTTSDALE, SOLARI, INC., UPC URGENT PSYCHIATRIC CARE, LLC, CONNECTIONS HEALTH SOLUTIONS, INC., and MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a VALLEYWISE BEHAVIORAL HOSPITAL are therefore liable to the extent permitted under Arizona law for the negligent acts and omissions of their employees, agents, contractors, supervisors, and personnel.

222.    The conduct of the individual Defendants described herein was reckless, malicious, oppressive, grossly negligent, and undertaken with conscious disregard toward Plaintiff DONAHUE's constitutional rights, liberty interests,

COMPLAINT FOR DAMAGES

75

bodily integrity, and personal safety, thereby entitling Plaintiff DONAHUE to punitive and exemplary damages against the individual Defendants in their individual capacities to the extent permitted by Arizona law.

## EIGHTH CAUSE OF ACTION
## COMMON LAW INTENTIONAL INFLICTION OF EMOTONAL DISTRESS
(Against Defendants JOHNSON, LEDO, STUMPF, HATHAWAY, WILLIAMS, WEBB, EVERTS, SOLARI, INC., UPC URGENT PSYCHIATRIC CARE, LLC, CONNECTIONS HEALTH SOLUTIONS, INC., NAMATOVU, EVERETT WILLIAMS, MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a VALLEYWISE BEHAVIORAL HOSPITAL, JANAJREH, GOLEBIOWSKI, PIKE, SCOTTSDALE, and DOES 1 through 50, inclusive)

223.    PLAINTIFF realleges and incorporates herein by reference the previous allegations as if fully set forth herein.

224.    The conduct of Defendants described herein was intentional, outrageous, extreme, abusive, reckless, malicious, oppressive, and beyond all possible bounds of decency tolerated within a civilized society.

225.    Defendants JOHNSON, LEDO, STUMPF, HATHAWAY, WILLIAMS, WEBB, EVERTS, SOLARI, INC., and DOES 1 through 15, inclusive, intentionally and/or recklessly subjected Plaintiff DONAHUE to severe emotional distress by causing and/or perpetuating Plaintiff DONAHUE's unlawful seizure, restraint, humiliation, involuntary detention, false accusations of homicidal and suicidal intent, public degradation, forced restraint procedures, and prolonged

COMPLAINT FOR DAMAGES

76

involuntary confinement despite lacking objectively verified evidence supporting such extreme actions.

226.   Defendants UPC URGENT PSYCHIATRIC CARE, LLC, CONNECTIONS HEALTH SOLUTIONS, INC., NAMATOVU, EVERETT WILLIAMS, DOES 16 through 30, inclusive, MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a VALLEYWISE BEHAVIORAL HOSPITAL, JANAJREH, GOLEBIOWSKI, PIKE, and DOES 31 through 50, inclusive, further intentionally and/or recklessly subjected Plaintiff DONAHUE to severe emotional distress by continuing Plaintiff DONAHUE's confinement, ignoring repeated claims of innocence and exculpatory evidence, forcibly medicating Plaintiff DONAHUE, exposing Plaintiff DONAHUE to unsafe and abusive conditions, permitting assaults upon Plaintiff DONAHUE, and repeatedly portraying Plaintiff DONAHUE as schizophrenic, dangerous, violent, and mentally impaired despite the alleged absence of objective supporting evidence.

227.   Defendants abused positions of authority, medical authority, governmental authority, psychiatric authority, custodial authority, and law-enforcement authority in ways that foreseeably and intentionally caused Plaintiff

DONAHUE severe emotional trauma, fear, humiliation, degradation, hopelessness, psychological injury, and distress.

228.   Defendants knew, or reasonably should have known, that the actions complained of herein would likely cause Plaintiff DONAHUE severe emotional distress, particularly given the extreme nature of involuntary psychiatric confinement, forced medication, physical restraint, false accusations of mass violence and suicide, repeated detention proceedings, and deprivation of liberty imposed against Plaintiff DONAHUE.

229.   As a direct, legal, and proximate result of Defendants' conduct, Plaintiff DONAHUE suffered severe emotional distress, psychological trauma, humiliation, anxiety, fear, emotional pain and suffering, reputational injury, loss of dignity, and other compensatory and general damages in an amount to be proven at trial.

230.   The conduct of the individual Defendants described herein was undertaken with conscious disregard toward Plaintiff DONAHUE's rights, safety, dignity, liberty, bodily autonomy, and emotional wellbeing, thereby constituting oppression, fraud, malice, and reckless indifference sufficient to justify punitive

COMPLAINT FOR DAMAGES

78

and exemplary damages against the individual Defendants in their individual capacities.

231. The acts complained of herein were committed by Defendants while acting within the course and scope of their employment, agency relationships, contractual authority, governmental authority, and/or actions under color of state law. Defendants CITY OF SCOTTSDALE, SOLARI, INC., UPC URGENT PSYCHIATRIC CARE, LLC, CONNECTIONS HEALTH SOLUTIONS, INC., and MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a VALLEYWISE BEHAVIORAL HOSPITAL are therefore liable to the extent permitted by Arizona law for the tortious acts of their employees, agents, contractors, supervisors, and personnel.

**NINTH CAUSE OF ACTION**
**COMMON LAW DEFAMATION PER SE**
**(Against Defendants JOHNSON, STUMPF, HATHAWAY, WEBB, EVERTS, SOLARI, INC., UPC URGENT PSYCHIATRIC CARE, LLC, CONNECTIONS HEALTH SOLUTIONS, INC., NAMATOVU, EVERETT WILLIAMS, PIKE, JANAJREH, GOLEBIOWSKI, MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a VALLEYWISE BEHAVIORAL HOSPITAL, SCOTTSDALE, and DOES 1 through 50, inclusive)**

COMPLAINT FOR DAMAGES

79

232.    PLAINTIFF realleges and incorporates herein by reference the previous allegations as if fully set forth herein.

233.    Under Arizona law, Plaintiff DONAHUE possessed protected rights to reputation, dignity, personal standing, and freedom from false and defamatory accusations falsely portraying him as dangerous, mentally impaired, violent, homicidal, suicidal, schizophrenic, criminal, unstable, and/or a threat to himself or others.

234.    Defendants JOHNSON, STUMPF, HATHAWAY, WEBB, EVERTS, SOLARI, INC., and DOES 1 through 15, inclusive, knowingly, intentionally, recklessly, and/or negligently made, published, repeated, ratified, and republished false statements and accusations concerning Plaintiff DONAHUE to law enforcement personnel, supervisors, governmental agencies, medical providers, evaluators, prosecutors, psychiatric personnel, hospitals, databases, and third parties.

235.    Such false statements included, but were not limited to, allegations and insinuations that Plaintiff DONAHUE wanted to commit mass violence, "suicide by cop," kill a girlfriend and/or ex-girlfriend, harm others, overthrow the government, suffered from schizophrenia or psychosis, lacked insight into reality, and/or posed a danger to himself or others despite Defendants allegedly lacking

COMPLAINT FOR DAMAGES

80

firsthand knowledge and despite the absence of independently corroborated evidence supporting such accusations.

236.   Defendants UPC URGENT PSYCHIATRIC CARE, LLC, CONNECTIONS HEALTH SOLUTIONS, INC., NAMATOVU, EVERETT WILLIAMS, PIKE, JANAJREH, GOLEBIOWSKI, VALLEYWISE, and DOES 16 through 50, inclusive, further republished, adopted, amplified, relied upon, and perpetuated such defamatory accusations and psychiatric characterizations through petitions, medical records, evaluations, confinement proceedings, diagnoses, treatment records, and communications with governmental entities and other providers despite Plaintiff DONAHUE repeatedly denying the allegations and repeatedly offering allegedly exculpatory evidence.

237.   Upon information and belief, Defendants caused and/or permitted the dissemination and retransmission of defamatory allegations and psychiatric characterizations concerning Plaintiff DONAHUE into governmental, law-enforcement, medical, psychiatric, and/or interstate databases and records systems, thereby further damaging Plaintiff DONAHUE's reputation, standing, liberty interests, and future opportunities.

COMPLAINT FOR DAMAGES

81

238. The statements and publications described herein constituted defamation per se because they falsely accused Plaintiff DONAHUE of criminality, dangerousness, serious mental illness, violent intent, instability, and conduct incompatible with lawful and ordinary participation in society.

239. Defendants made and/or republished the defamatory statements described herein with knowledge of falsity, reckless disregard for truth or falsity, deliberate indifference toward the truth, and/or conscious avoidance of exculpatory evidence, including the refusal to review the underlying Solari Human Services recording repeatedly referenced by Plaintiff DONAHUE.

240. As a direct and proximate result of Defendants' conduct, Plaintiff DONAHUE suffered reputational injury, humiliation, emotional distress, loss of standing, psychological trauma, deprivation of liberty, economic harm, and other compensatory and general damages in an amount to be proven at trial.

241. The conduct of the individual Defendants described herein was malicious, oppressive, reckless, fraudulent, and undertaken with conscious disregard toward Plaintiff DONAHUE's rights and reputation, thereby entitling Plaintiff DONAHUE to punitive and exemplary damages against the individual Defendants in their individual capacities.

COMPLAINT FOR DAMAGES

82

242.   The acts complained of herein were committed by Defendants while acting within the course and scope of their employment, agency relationships, contractual authority, governmental authority, and/or actions under color of state law. Defendants CITY OF SCOTTSDALE, SOLARI, INC., UPC URGENT PSYCHIATRIC CARE, LLC, CONNECTIONS HEALTH SOLUTIONS, INC., and MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a VALLEYWISE BEHAVIORAL HOSPITAL are therefore liable to the extent permitted by Arizona law for the tortious acts of their employees, agents, contractors, supervisors, and personnel.

**ELEVENTH CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983**
**Violation of Second Amendment Right to Keep and Bear Arms and**
**Fourteenth Amendment Due Process**
**(Against Defendants CITY OF SCOTTSDALE)**

243. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 242 inclusive, above, as though fully set forth herein.

244. Defendants seized Plaintiff DONAHUE's lawfully owned firearms during the events described herein under the purported authority of an emergency mental-health investigation and detention.

COMPLAINT FOR DAMAGES

83

245. Any temporary governmental justification for retaining Plaintiff DONAHUE's firearms terminated when the underlying proceedings concluded and the basis for continued deprivation ceased to exist.

246. The underlying mental-health proceedings were dismissed, Plaintiff DONAHUE was never adjudicated a prohibited possessor, was never convicted of any offense prohibiting firearm ownership, and at all relevant times has remained legally entitled under Arizona and federal law to possess and acquire firearms.

247. Following dismissal of the proceedings, Plaintiff DONAHUE repeatedly demanded the return of his firearms on no fewer than ten (10) separate occasions. Despite those repeated demands, Defendants have continuously refused to return Plaintiff's property without lawful justification.

248. By continuing to retain Plaintiff DONAHUE's firearms after any lawful basis for their seizure expired, Defendants have deprived Plaintiff of his right to keep and bear arms secured by the Second Amendment to the United States Constitution and incorporated against the States through the Fourteenth Amendment.

249. Defendants have further deprived Plaintiff DONAHUE of his personal property without due process of law by refusing to return his lawfully owned

COMPLAINT FOR DAMAGES

84

firearms despite the absence of any valid court order, criminal conviction, lawful disability, or other constitutional basis authorizing their continued retention.

250. The continued retention of Plaintiff DONAHUE's firearms is unreasonable, arbitrary, ongoing, and constitutes a continuing violation of Plaintiff's constitutional rights.

251. The acts and omissions of Defendants were intentional, malicious, oppressive, reckless, and undertaken with deliberate indifference to Plaintiff DONAHUE's clearly established constitutional rights, thereby entitling Plaintiff to compensatory damages, declaratory relief, injunctive relief requiring the immediate return of his firearms, attorney's fees pursuant to 42 U.S.C. § 1988 if applicable, and such further relief as the Court deems just and proper.

252. As a direct and proximate result of Defendants' conduct, Plaintiff DONAHUE has suffered the loss of the use and possession of his lawfully owned firearms, deprivation of fundamental constitutional rights, emotional distress, inconvenience, loss of property rights, and other damages in an amount to be proven at trial.

**WHEREFORE**, plaintiff prays for judgment as follows:

COMPLAINT FOR DAMAGES

85

a)  For a judgment against all defendants for compensatory damages in an amount in excess of $400,000,000.00;

b)  For a judgment against all defendants, save defendant CITY, for punitive damages in an amount in excess of $200,000,000.00;

c)  For an award of reasonable attorney's fees and costs;

d)  For a trial by jury; and

e)  For such other and further relief as this honorable court deems just and equitable.

COCHRAN F. DONAHUE

*"A lie gets halfway around the world before the truth has a chance to get its pants on." - Winston Churchill*
COMPLAINT FOR DAMAGES

86